[Civil No. 2804.  Filed June 3, 1929.]

[277 Pac. 812.]

AMADO FRANCO, Appellant, v. MINOS VAKARES, as Administrator of the Estate of APALINAR SALGADO, Deceased, Appellee.

See Motor Vehicles, 42 C. J., sec. 947, p. 1170, n. 37; sec. 953, p. 1176, n. 87; sec. 957, p. 1179, n. 14.

Negligence, 45 C. J., sec. 858, p. 1302, n. 15.

New Trial, 46 C. J., sec. 137, p. 182, n. 92.

Mr. C. H. Young, for Appellant.

Messrs. Cella & Cella, for Appellee.

ROSS, J.—This is an appeal from a verdict and judgment awarding damages to Minos Vakares as administrator of Apalinar Salgado for the latter's death while riding as a guest of the defendant, Amado Franco, in his Ford coupé.

Defendant contends that under the undisputed facts plaintiff is not entitled to any judgment against him, and he saved this point for review by moving for a directed verdict at the close of the case, upon the ground of insufficient evidence to support the complaint, and also by motion for a new trial. Likewise error is predicated on the court's instructions.

The evidence is free from material conflict, and presents this fact situation: On Sunday night, August 28th, 1927, at about 8:30 o'clock, the defendant and one Philip M. Chaoss were out riding in defendant's Ford coupé and, as they were going along Anita Street, in the city of Tucson, Chaoss saw walking on the sidewalk Salgado and Jose M. Escarcia, whereupon he suggested to defendant that they invite Salgado and Escarcia to ride with them. Defendant stopped his car, and Salgado and Escarcia got into it. Escarcia, Chaoss and defendant, who

was driving, sat on the seat, and Salgado sat partly on Chaoss' and partly on Escarcia's lap. They had not proceeded very long or far when Salgado produced from somewhere on his person a pint bottle of corn whisky, from which they all drank. Later defendant took another drink. Salgado sickened at his stomach and vomited as the result of his drinking. In the meantime they were driving around the streets of Tucson, talking and singing, some of the party insisting on doing one thing and some another. This was kept up until about 9:40 of that evening, when the driver (defendant), while racing with another car along a street of the city, drove his coupé head-on into a street-car moving slowly in the opposite direction, said street-car being at the time well lighted, and the motorman doing everything possible to attract attention. The impact killed Salgado, and injured the others, but not fatally.

Chaoss, describing the condition of the party with reference to sobriety, said:

"I guess they were feeling good, you see, and that is why I—they were singing and they wanted to get a guitar. Maybe they feel like it. I guess they did, but you know they don't sing unless they get a drink or something like that, be out of their mind."

Defendant, Franco, testified that he drank twice from the bottle, and after a little while his memory became blank, and that their condition was such that they did not know what they were doing.

The liquor was described by the witnesses as bad stuff and as tasting strong.

Chaoss, Escarcia and defendant all testified that they did not see or hear the street-car, and did not know what had happened to them until some time after the accident—at the hospital, in fact.

The motorman, testifying, said in effect: "When I first saw them they were about one block away. I had a good headlight—one of the best. The car was

well lit. To me it looked like there was two cars racing down the street towards me—one was on the track and one alongside of it. They just kept coming towards me. I stood up and rang the bell; it was a loud bell; tried to warn them. The coupé couldn't have been more than three to ten feet from me when it undertook to turn to the west. I kept ringing until they hit me. They were traveling very fast. I was coming to a stop or had stopped. Within a few feet they tried to get off the track, but . . . ''

The policeman who arrived on the scene shortly after the accident found in the car a partially emptied pint bottle of corn whisky.

The answer interposed the defense (1) of intoxication induced by plaintiff's intestate, and (2) the intestate's contributory negligence. The testimony without conflict sustained both of these defenses.

A guest who rides in an automobile knowing that the driver is intoxicated is guilty of contributory negligence. He knows, or ought to know, that a drunken or. intoxicated driver is apt to be a careless and reckless driver, and should be held to accept an invitation to ride with such a driver at his own risk. 42 C. J. 1176, § 953. As is said in *Schwartz* v. *Johnson*, 152 Tenn. 586, 47 A. L. R. 323, 280 S. W. 32: ''When one gets into an automobile which is to be operated by a drunken driver, through the traffic of a populous city, such person takes his life in his hands. All the authorities are to the effect that such contributory negligence prevents a recovery by one taking such a chance, if he is injured as a result of the driver's negligence.''

On the issue of contributory negligence, the court, under section 5, article 18, of the Constitution, would have properly submitted the case to the jury if that had been the only issue. That section provides that the defense of contributory negligence is one of fact and to be left to the jury at all times.

Whatever the state of the testimony, contributory negligence must always go to the jury when made an issue. It would seem, however, that, where the facts uncontrovertedly convict the plaintiff's intestate of contributing to his own injury and death, as they do in this instance, the court should have exercised its discretion upon a motion for a new trial to vacate and set aside the verdict for that ground.

Granting that the case was properly submitted to the jury upon that issue, and that the court's refusal to order a new trial was proper under the circumstances, what of the other defense, to wit, that the plaintiff's intestate gave to the defendant the intoxicating liquor which produced in him, while operating the car, a condition of intoxication? We think this defense should be absolute.

If it be contributory negligence to ride in an automobile with a driver knowing him to be intoxicated, what shall be said of him who furnishes the liquor and with the driver drinks it until both are drunk, or, if not drunk, at least are incapable of exercising the care of a reasonably prudent person? As to third persons, the one who furnished the liquor would certainly be no less liable than the drunken driver. Both in morals and in law, the one who instigates or procures the commission of a wrong is regarded as a principal. In an ancient case the one who lighted and threw the squib into the crowd, and not the one who brushed it aside, was liable for injury to a third person. The squib thrower here was the man who introduced into this automobile party the bootleg whisky—the deceased.

The deceased was not only negligent in confiding his safety to a drunken driver, but he was culpably and grossly negligent when he induced or caused the driver's inebriety. Of course, it is obvious that no one in his right senses would drive an automobile into

a stationary or moving object the size and weight of a street-car. Only a crazy person, or one bent on committing suicide, would do such a thing. Apparently none of the four occupants of the car was in the possession of his senses or knew or apprehended the danger of such an act. The three survivors heard nothing and saw nothing of the impending danger until it was too late. The deceased had a clear and unobstructed view, as he was sitting on the laps of Chaoss and Escarcia, and, if any danger registered on his brain, he failed to transmit it to his companions. The evidence shows that they did not realize what they were doing and this is indubitably confirmed by the manner of the accident.

These facts bring the case within the rule announced by some of the courts that one who rides in an automobile, knowing at the time the driver thereof is intoxicated, is as to any negligence of the driver equally guilty with him. In other words, in such circumstance the negligence of the driver is the negligence of the passenger or guest. This rule was applied in *Chapman* v. *Powers,* 150 Miss. 687, 116 South. 609, wherein a wife who was injured in an automobile accident was denied the right to recover damages, it appearing that the driver of the car, to wit, her husband, was intoxicated at the time, the court saying:

"Although the general rule is that a guest in an automobile is not chargeable with the negligence of his host, it is also true that the facts and circumstances may be such that the negligence of the host may become the negligence of the guest. If it is manifest that the host, from drunkenness, or other cause, is unfit to drive the car, and that his driving will endanger the life and limbs of others, and the guest is aware of that condition of affairs, and voluntarily rides in the car with such a host, the negligence of the latter becomes the negligence of the guest."

In *Lynn* v. *Goodwin*, 170 Cal. 112, L. R. A. 1915E 588, 148 Pac. 927, such negligence is characterized as "independent"; the language used being:

"While it is true that in general the negligence of the driver of a vehicle is not imputable to a passenger so as to bar that passenger's right of recovery [citing cases], yet the conduct of the plaintiff in riding and in continuing to ride in an automobile when he must have known that the driver was intoxicated established independent negligence upon the plaintiff's part, apart from the driver's negligence, barring the right of recovery."

In *Wayson* v. *Rainier Taxi Co.*, 136 Wash. 274, 45 A. L. R. 290, 239 Pac. 559, the rule as stated in the syllabus is:

"Although negligence of driver of vehicle is not imputable to passenger, yet the conduct of a passenger in entering an automobile and continuing to ride therein, when he knew or must have known driver was intoxicated, establishes negligence barring recovery, and rule applies to a passenger in a vehicle for hire as well as guest." Berry on Automobiles, 4th ed., page 549, and Babbitt on Automobiles, 2d ed., section 1206, announce the same rule.

The same legal exemptions and responsibilities are incurred by all engaged in a common or joint enterprise. In the law of negligence, all having a community of interest in the objects or purposes of an undertaking and an equal right to govern the movements and conduct of each other fall in that classification. *Cunningham* v. *City of Thief River Falls*, 84 Minn. 21, 86 N. W. 763. In such case, upon the principle of agency the negligence of one is that of all.

For several persons to indulge in or put on a "joy ride" in a populous community may not bring the participants strictly or technically within the rule governing those engaged in a common or joint enterprise, but such a party certainly does have in view a common object or purpose, to wit, to extract from

the passing moments diversion and entertainment. The common rather than the individual will of any of the party in such an engagement, we may imagine, usually controls and directs the movements of the "joy riders." We think the relationship is so near to that of a common enterprise that the rule of negligence therein may be invoked. Cases so holding are *Wentworth* v. *Town of Waterbury,* 90 Vt. 60, 96 Atl. 334; *Jensen* v. *Chicago etc. R. Co.,* 133 Wash. 208, 233 Pac. 635.

We think the court should have granted defendant's motion for a directed verdict at the close of the case on the ground that the evidence conclusively and without conflict showed that the plaintiff's intestate was guilty of independent negligence.

It seems to us that it would be most extraordinary to allow the estate of Salgado to profit by an accident that was caused by Salgado's own misconduct. Through his acts the criminal law of the state was being violated in at least three respects when this accident happened: (1) The defendant was guilty of driving an automobile on the public highways while under the influence of intoxicating liquor furnished by deceased; (2) of having possession of intoxicating liquor; and (3) of transporting it. While none of these fractures of the criminal law was the proximate cause of the accident, the furnishing to the driver of intoxicating liquor doubtless was.

The cause is remanded, with directions that the complaint be dismissed.

LOCKWOOD, C. J., and McALISTER, J., concur.