WILBUR WRIGHT, Appellant, v. DES MOINES RAILWAY COMPANY, Appellee.

No. 45744.

DECEMBER 9, 1941.

Miller, Huebner & Miller, Charles W. Joiner, and Edgar C. Corry, Jr., for appellant.

Corwin R. Bennett, J. W. Albert, and Dale S. Missildine, for appellee.

STIGER, J.—Plaintiff's specifications of negligence are:

"2. In operating said street car from a position of safety to a position of danger that could be seen and appreciated.

"3. In operating said street car from a stationary position north of the paved highway, across said highway, when there was not sufficient space to make said movement in safety.

"4. In operating said street car from a stationary position north of the paved highway towards the path of plaintiff's vehicle when said vehicle was so close as to constitute an immediate hazard."

Defendant's grounds for a directed verdict are as follows:

"1. There is no evidence from which the jury could properly find that the defendant was guilty of any acts of negligence charged against defendant in the petition.

"2. There is no evidence from which the jury could properly find any negligence of the defendant charged in the petition was the proximate cause of plaintiff's injury and damage.

"3. There is no evidence from which the jury could properly find that the plaintiff was free from contributory negligence.

"4. The evidence shows affirmatively the plaintiff was guilty of contributory negligence.

"5. There is no evidence from which the jury could properly find for the plaintiff on any damage alleged in the petition.

"6. On the whole record, if a verdict were returned in favor of the plaintiff, it would be the duty of the court to set it aside."

The motion was sustained generally.

We are of the opinion the court erred in sustaining the motion.

I. Euclid Avenue, an east and west street in the city of Des Moines, intersects defendant's street car tracks running north and south on its private right of way directly east of East 33d Street.

On the morning of July 7, 1940, plaintiff was driving his Ford semi-trailer tractor east on East Euclid Avenue, approaching defendant's tracks from the west. Plaintiff's testimony is substantially as follows:

When he was about 300 feet west of the tracks and driving about 35 miles per hour, he observed defendant's street car approaching the intersection from the north. Plaintiff then applied his brakes, reducing his speed to about 25 miles per hour. He saw the street car approach the crossing and stop on the north side of Euclid Avenue "right up against the highway." When plaintiff observed that the street car had stopped he released his brakes and proceeded towards the tracks at a speed of about 25 miles per hour. When he had reached a point about 35 feet west of the tracks, the witness testified that "he jumped out in front of me. I applied my brakes, but it was impossible to stop. I swerved to the right, but he kept coming, he ran into me on the right or south side of the pavement. My right wheels were on the shoulder. I wouldn't have any idea about the speed the street car was going when it ran into me, when he started up it seemed like he just jumped out there in front of me." Plaintiff thought the street car would remain stopped until he passed over the tracks. There was a clear view of the tracks north of Euclid Avenue from a point 300 feet west of the intersection.

The motorman started the street car across the highway when plaintiff was 35 feet west of the tracks in full view and approaching the tracks at about 25 miles per hour. In just about another second plaintiff would have been safely across the tracks. If defendant had delayed starting its street car about a second there would have been no collision. That a dangerous situation would, under the circumstances, be created by starting the street car was, or should have been, apparent

to the motorman. Plaintiff, observing the street car was still stationary when he was 35 feet from the tracks and, believing it was waiting for him to pass, proceeded on his journey east.

In view of the position of plaintiff's car, the starting of the street car made a collision most probable if not inevitable. The motorman moved the street car from a position of safety into a place of obvious danger as plaintiff drove his car to the right side of the intersection in an attempt to avoid a collision and no attempt was made by the motorman to reduce the speed of the street car.

In Borg v. Des Moines C. R. Co., 190 Iowa 909, 912, 181 N. W. 10, 11, the court said:

"It is the business of those in charge of a street car, no less than it is the business of the driver of an automobile or other carriage, to keep a lookout ahead, and to exercise reasonable care to avoid collision with other travelers. * * *

"The duty of care to avoid collision is reciprocal, and whether the defendant, in the management and control of its car in this instance, did or did not observe this duty is also quite clearly a question of fact for the jury."

In Rosenberg v. Des Moines R. Co., 213 Iowa 152, 160, 238 N. W. 703, 708, it is said:

"Appellee's tracks at the place of the collision, as before indicated, were maintained on a private right of way. The care imposed upon street railways which operate cars on public streets, where pedestrians and vehicles are moving to and fro, is stringent. Due care, of course, always must be observed by operators of street and interurban railway companies. * * *

"In previous cases, we have said that the rule for observation at steam railway crossings does not apply in all its strictness to the care necessary when crossing an interurban railway on city streets." See also Smith v. Chicago, B. & Q. R. Co., 227 Iowa 1404, 291 N. W. 417.

At the moment the street car was put in motion, there was nothing in the conduct of plaintiff in his approach to suggest to the motorman that he intended to stop at the crossing

and wait for the street car to pass over the intersection. On the contrary, it must have been apparent to the motorman that plaintiff intended to proceed across the tracks ahead of the street car.

It is too clear to require further discussion that the question of the negligence of the motorman, who was fully aware of the situation, was for the jury.

II. We are satisfied plaintiff was not guilty of contributory negligence as a matter of law. Plaintiff was in full view of the motorman as he approached and stopped the street car at the north edge of Euclid avenue. The street car remained stationary until plaintiff reached a point 35 feet from the tracks and then proceeded towards the truck without reducing its speed. As plaintiff approached the intersection no warning was given by the motorman of his intention to start the street car. Whether plaintiff, under the circumstances, was justified in assuming the street car would not be put in motion until he had passed over the tracks, in assuming the stopping of the street car was an invitation to him to proceed over the tracks in front of the street car, whether he exercised ordinary prudence in believing he could safely proceed across the tracks under the circumstances, were propositions that should have been submitted to the jury for decision.

In the case of Hanrahan v. Sprague, 220 Iowa 867, 263 N. W. 514, 515, plaintiff knew an engine and two cars were standing immediately north of the curb line of a street on which he was traveling in his automobile. The court, in holding the failure to give a warning of an intention to start the train might be the proximate cause of the collision, and recognizing the material distinction between a standing train and one in motion, said on page 869:

"The engine and cabooses in sight of plaintiff as he approached the crossing were standing still. Plaintiff testified they had been observed standing still in the same location when he had driven across the intersection about 15 minutes prior to the accident. Had the engine and cars been in motion, approaching the crossing, plainly seen by plaintiff, the

duty to yield the right of way would ordinarily have been plaintiff's, in order to avoid the collision, and his failure to do so would be contributory negligence barring his recovery, even if the bell was not ringing, as held in Emerick v. Chicago G. W. R. Co., 199 Iowa 464, 202 N. W. 113. But an engine standing still, that has given no signal of movement, is not such a signal of danger that as a matter of law a traveler should have it under observation every moment as he approaches the public crossing. * * * There was evidence from which the jury could have found that plaintiff was within his rights in attempting to cross the tracks in front of the standing engine and cars, and that no signal of movement had been given, and that as plaintiff was about to cross the track the engine and cars were suddenly moved backwards, into plaintiff's truck, without warning or ringing of the bell.''

In the case of Borg v. Des Moines C. R. Co., 190 Iowa 909, 912, 181 N. W. 10, 11, the fact situation was similar to the situation in the instant case. The court said:

''If it be true, and for the purposes of this appeal we must assume its truth, that, as the driver of the Ford reached the place where his way was obstructed by the other auto parked against the south curb of the street, and the street car was standing still at the farther end of the switch, he was not required, as a matter of law, to stop and wait for the parked auto or the street car to be moved, before attempting to proceed on his way, unless there was something in the situation to warn him, as a reasonably prudent man, that he could not go forward without imminent danger of a collision; if the distance between the parked auto and the standing street car was such that he reasonably believed he could safely drive around the auto and into the south open carriageway beyond it, without coming into collision with the street car, —then he was not negligent in trying to do so, and whether he was justified in so believing or in so acting is a question of fact for the jury, and not a matter of law for the court.''

For cases in other jurisdictions, see Canning v. Chicago & M. Electric R. Co., 163 Wis. 448, 157 N. W. 532; Gelb v. Third Avenue R. Co., 123 Misc. Rep. 136, 204 N. Y. S. 251.

III. Ground 5 of defendant's motion for directed verdict is there is no evidence from which the jury could properly find for plaintiff on any damage alleged in the petition. Plaintiff testified that immediately prior to the accident the truck was worth $600. A competent witness for plaintiff testified to the fair and reasonable cost of the repairs necessary to restore the tractor to the condition it was in before the injuries. The witness testified he was familiar with Ford semi-trailer tractors. The plaintiff is a minor but it appears that he has been emancipated.

We are of the opinion that the evidence was sufficient to justify the submission of the question of damages to the tractor to the jury. See Laizure v. Des Moines R. Co., 214 Iowa 918, 241 N. W. 480. Plaintiff's evidence was sufficient to sustain a verdict.

IV. As part of plaintiff's cross-examination, defendant offered in evidence Exhibit A which purports to be a book containing rules and regulations adopted by the Interstate Commerce Commission under authority of the Motor Carrier Act, 1935. It is entitled "Motor Carrier Safety Regulations Revised". The book contains 84 pages of rules and regulations prescribing in minute detail the qualifications of drivers, equipment and driving of motor vehicles, the hours of service of drivers, reporting of accidents, inspection and maintenance of motor vehicles, etc. One of the rules relied on by defendant as bearing on the question of plaintiff's contributory negligence is:

"2.132. Other Vehicles Must Slow Down and Be Prepared to Stop.—The speed of any other motor vehicle shall, upon approaching a railroad grade crossing, be reduced to a rate that shall enable a stop to be made before reaching the nearest rail of such crossing, and the crossing shall not be traversed until due caution has been taken to ascertain that the course is clear."

Plaintiff was engaged in interstate commerce at the time of the collision. The court erred in admitting the exhibit in evidence. Assuming it was properly identified and authenticated, the administrative rules and regulations of the commission are

418

not material to the issues in this case. It is the exclusive prerogative of legislative assemblies to enact laws prescribing the standard of care required of travelers on the public highways. The Congress did not intend to delegate and could not delegate to the commission legislative functions. As the rules do not have the force and effect of laws, a violation thereof by plaintiff, if any, would not constitute negligence.

For an exhaustive review of the question of the delegation of legislative powers, see Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39.

As the motion does not contain a ground justifying a directed verdict, a reversal is necessary.—Reversed.

GARFIELD, OLIVER, BLISS, HALE, WENNERSTRUM, and MITCHELL, JJ., concur.