[No. 28837.  *En Banc.*  April 16, 1943.]

DOROTHY TAYLOR, *by R. B. Taylor, Sr., her Guardian ad Litem, Appellant,* v. RICHARD TAUG, *Respondent.*[1]

'Reported in 136 P. (2d) 176.

*E. H. Kohlhase* and *Fred M. Bond,* for appellant.

*L. B. Donley,* for respondent.

SIMPSON, C. J.—Dorothy Taylor, a minor, instituted this action through her guardian *ad litem* to recover damages for personal injuries sustained while riding as a guest in an automobile owned and operated by defendant. At the close of plaintiff's case, the court sustained defendant's challenge to the sufficiency of the evidence, and entered judgment dismissing the action. Plaintiff has appealed. The assignments of error are: In sustaining respondent's motion for a nonsuit and in dismissing the action.

The evidence relative to the activities of appellant and the group with whom she associated on the evening of the accident was given by Edna Dimbat, a resident of Portland, who was spending some time with friends at Long Beach. Her testimony shows that, about eight o'clock on the evening of the accident, she met respondent, Hal Caples, Lamar Caples, and Ernie Jacobsen at Marsh's tavern at the town of Long Beach, where they were engaged in drinking beer. She said that they planned to attend a dance at Raymond, and started for that city, but, after traveling a short distance, returned to the tavern at Long Beach, and then decided to go to a dance at "Oceanville," approximately eight miles away. Her testimony relative to drinking intoxicating liquor is as follows:

"Q. Now were you all drinking beer together there before you left Long Beach? A. Dorothy Taylor and the Tinker girl wasn't. Q. But you and the Caples boys and Mr. Taug were, is that correct? A. Yes I had been drinking some beer. Q. Did you drink any liquor there? A. No. Q. They didn't have any liquor there? A. No. Q. They hadn't a club license or anything like that? A. No. Q. Mr. Jacobsen and Mr. Taug and the two Caples boys and yourself were all

together there drinking beer at the tavern? A. Yes and my other friends too. Q. And had you drank anything with them before you went in there? A. Well I had had a glass of beer at George Stokes' over at the Rendezvous, earlier in the evening. Q. All of you had? A. Yes."

Mrs. Dimbat testified further that respondent drove the car, one girl sitting beside him and the other four sitting in the back seat, with appellant sitting on the lap of the man on the left. Again she stated:

"Q. Do you know how far you had gotten on the way or how far you had been on the highway when Miss Taylor first made the remark to the driver? MR. DONLEY: Made what remark to the driver? MR. BOND: Q. Made any remark to the driver about his driving? A. I don't know just how far we were. I know it wasn't very long before she asked him—shortly after she asked him that he lost control of the car and we had the accident. Q. Well now when she first spoke to him about the manner of his driving or anything she said along that line tell us just what she did say. What did she say to him? A. I don't remember her exact words. She asked him to stop the car and let her out, that she was nervous, because she had just gotten over one accident and naturally she was still nervous from that and did not want to ride with him any more. Q. Did Miss Taylor say why she wanted to get out? A. Because he was driving so fast and reckless. . . . Q. Will you state whether or not Miss Taylor said anything in regard to why she wanted to get out of the car? Give us the whole conversation as you remember it. . . . A. Well, I don't remember just the exact words, only the fact that she asked him to stop the car and let her out because he was going so fast and she did not want to be in another accident."

On cross-examination, she testified:

"Q. Now when you started out from there [Long Beach] how far had you gone before you say that Miss Taylor said she wanted him to stop and let her out, a mile, two miles, three miles? A. Yes sir, just a guess

it would be about two miles. Q. About two miles. The first complaint she made then was at a distance of about two miles. A. Yes. Q. And very shortly before the accident? A. Yes."

When the party approached the scene of the accident, it was approximately ten o'clock at night, and the weather was clear, except for occasional foggy stretches termed "fog banks." The road upon which the party was driving was newly constructed and covered with fine gravel. As they reached a point about three miles north of Long Beach, the respondent lost control of the car, causing it to plunge into a ditch on the left side of the road. As a result of the accident, appellant was severely injured.

It is admitted that she was a guest of respondent when the parties started on their journey to the dance.

Appellant testified that she did not remember what happened after she saw the boys enter the tavern.

In this case, Rem. Rev. Stat., Vol. 7A, § 6360-121 [P. C. § 2696-879], applies. That statute, enacted in 1933, chapter 18, p. 145, Laws of 1933, reenacted in 1937, chapter 189, p. 911, § 121, Laws of 1937, reads as follows:

"No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator: *Provided,* That this section shall not relieve any owner or operator of a motor vehicle from liability while the same is being demonstrated to a prospective purchaser."

Prior to 1933, this court held that the host driver of a car was only responsible for gross negligence. The evident purpose of the enactment of the statute just quoted was to prevent collusion between host and guest

in order to defraud casualty insurance companies. The relationship of host and guest in its inception carries with it the concept of a gratuitous offer of service by a host, or a request for service on the part of a guest and an acceptance, followed by an overt act. While it cannot be held that the relationship is founded upon contract, still in its very nature it must be based upon a meeting of the minds of the host and the intended guest, followed by an act which manifests an intent to proceed with the journey.

■■ Appellant contends that the relationship of host and guest ceased at the time appellant asked respondent to stop the car and allow her to leave it, and that from that time respondent was responsible for any injury caused to appellant through his negligence. Counsel for appellant base their contention upon the cases of *Blanchard v. Ogletree*, 41 Ga. App. 4, 152 S. E. 116, and *Manser v. Eder*, 263 Mich. 107, 248 N. W. 563.

The first case was

" . . . a suit for damages on account of the homicide of the plaintiff's daughter, who was killed when an automobile which she had entered as the invited guest of the defendant, and which the defendant was driving, was overturned. The evidence as to the facts and circumstances attending the accident presented an issue as to whether the defendant was guilty of gross negligence at the time the accident occurred, the testimony being such as to authorize a finding either for or against the defendant on that issue. By an amendment to the petition it was alleged that the deceased had, prior to the accident, not only protested against the rate of speed at which the defendant was driving, but requested to be allowed to leave the car and return to Atlanta on the train, *but that the defendant refused* and disregarded the request, and continued to increase his rate of speed." (Italics ours.)

The court held:

"The court should have instructed the jury that if it was found from the evidence that the decedent had

ceased to be the voluntary and gratuitous guest of the defendant, the duty would thereafter devolve upon him to exercise ordinary care for her safety."

It is of interest to note that the supreme court of Georgia has never passed on the question.

In the second case, the court considered evidence relative to the protest of a guest in order to ascertain whether the driver was guilty of wilful and wanton misconduct. It is quite clear that this case has no bearing upon the question presented.

We are unable to agree with appellant's argument or the reasoning of the cited cases.

In speaking of the host-guest statute, this court said in *Parker v. Taylor*, 196 Wash. 22, 81 P. (2d) 806:

"The statute means that one who accepts another's invitation to ride in his car *assumes the risk of all injuries, except those intentionally caused by the owner or driver,* and, as to those, proof that he intentionally did the act which resulted in the injury is not sufficient to fix liability. It must be made to appear that he intended to injure." (Italics ours.)

The plain intent of the statute, as interpreted in the above case, is that, in order for a guest to recover from a host, it must be shown that the host driver, prior to an accident, conceived and acted upon a premeditated intent to injure his guest. There is no testimony in the present case which shows that respondent had any intent to injure the appellant.

This court has discussed the effect of. the protest made by the guest in the cases of *Wolden v. Gardner,* 159 Wash. 665, 294 Pac. 574; *Wold v. Gardner,* 167 Wash. 191, 8 P. (2d) 975; *Zelinsky v. Howe,* 163 Wash. 277, 1 P. (2d) 294; *Dye v. Seattle,* 173 Wash. 515, 24 P. (2d) 67; *Quayle v. Knox,* 175 Wash. 182, 27 P. (2d) 115; *Graves v. Mickel,* 176 Wash. 329, 29 P. (2d) 405. In none of these cases did we hold, or is it indicated

that we intended to hold, that the relationship of host and guest ceased when the guest objected to the manner in which the car was being driven. The only purpose of the consideration of the question of protest was whether or not the evidence showed that the guest was guilty of contributory negligence in riding with a reckless driver.

The contention of appellant is answered by the quotation from *Parker v. Taylor, supra,* which we have set out. When appellant accepted a ride with respondent, she became a guest for the entire journey. To hold otherwise would nullify the plain wording and intent of the host-guest statute.

Admitting, *arguendo,* that the contention of appellant is correct, it is quite evident that the evidence was not sufficient to go to the jury upon that question. There is no evidence or inference from evidence that the statement made by appellant was spoken in a tone loud enough for the driver to hear, or that he refused to comply with her request. In other words, there was a total failure of proof that the driver heard this statement or that he refused any request made by his guest.

The testimony of Edna Dimbat which we have set out shows that respondent and the two Caples had been drinking intoxicating liquor during the evening, and were so engaged at the time appellant and her girl friend came into Marsh's tavern. That the drinking of intoxicating liquor effectually destroys the faculties essential to safe driving, is of such common knowledge that no one with sense will submit to the peril of riding with a driver who has recently consumed liquor. Anyone who submits to that peril assumes the risk attendant upon the journey and is guilty of contributory negligence which precludes recovery. Appellant was a high school graduate and certainly must have appreciated the danger of riding in a car driven by one whom she had just seen drinking intoxicating liquor.

In *Archer v. Bourne,* 222 Ky. 268, 300 S. W. 604, it appears that, during a ride in a taxi, the driver took two drinks of whiskey in the presence of a passenger, who was thereafter injured when the automobile left the road and turned over. The court held that the passenger could not recover for the reason that she was contributorily negligent in riding with a driver who drank intoxicating liquor while driving a car. The case just cited and our conclusion are supported by the following cases: *Franco v. Vakares,* 35 Ariz. 309, · 277 Pac. 812; *Jones v. Pacific Gas & Electric Co.,* 104 Cal. App. 47, 285 Pac. 709; *Whitsett v. Morton,* 138 Cal. App. 628, 33 P. (2d) 54; *Richard v. Canning,* 158 So. (La. App.) 598; *Schwartz v. Johnson,* 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323; *Maybee v. Maybee,* 79 Utah 585, 11 P. (2d) 973; *Thomas v. Steppert,* 200 Wis. 388, 228 N. W. 513.

Rem. Rev. Stat., Vol. 7A, § 6360-119 [P. C. § 2696-877], provides:

"It shall be unlawful for any person to operate any vehicle upon the public highways of this state while under the influence of or affected by the use of intoxicating liquor or of any narcotic drug. . . ."

We have held that one driving in violation of this statute is guilty of negligence *per se.* *Burget v. Saginaw Logging* Co., 197 Wash. 318, 85 P. (2d) 271.

By the same reasoning, we must hold that one who voluntarily rides with such a driver assumes the risk of the venture and contributes to the injury. This conclusion is borne out by the statement we have quoted from *Parker v. Taylor, supra.* This accident was simply the aftermath of a drinking party and, while appellant did not drink intoxicating liquor, she certainly knew that liquor was being consumed by the driver and others in his company.

We hold that appellant assumed the risk attendant

upon the journey, and that she was guilty of contributory negligence. The judgment of the trial court was correct and is therefore affirmed.

BEALS, MILLARD, ROBINSON, and JEFFERS, JJ., concur.

STEINERT, J. (concurring in the result):—I concur in the result: solely upon the ground that, under the evidence in this case, the appellant assumed the risks of the trip and was guilty of contributory negligence, barring recovery by her.

GRADY, J. (dissenting)—I am not in accord with the opinion of the majority because it seems to me too many assumptions are indulged in, which I do not believe warranted by the evidence or based upon matters within the province of the jury to find and decide. The court is reviewing the action of the trial court in sustaining a challenge to the sufficiency of the evidence at the close of appellant's case, and, hence, should be guided by the rules set forth in *Lindberg v. Steele,* 5 Wn. (2d) 54, 55, 104 P. (2d) 940, which are as follows:

"A challenge to the sufficiency of the evidence, or a motion for nonsuit, admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to plaintiff. [Citing cases.]

"In the determination of such challenge or motion, even though the plaintiff's evidence is in some respects unfavorable to her, she is not bound by the unfavorable portion of such evidence, but is entitled to have her case submitted to the jury on the basis of the evidence which is most favorable to her contention. [Citing cases.]"

The theory of the majority opinion, as I interpret it, is that respondent, the driver of the car, was under the influence of intoxicating liquor, or affected by the use of it, to such an extent as to make him unsafe to drive

the car; that the appellant was cognizant of his condition; and that appellant therefore not only assumed all the risks attendant upon riding in an automobile driven by such a person, but also was guilty of contributory negligence as a matter of law by so doing. Also, that, when one once becomes a guest, he continues as such for the entire journey.

I am unable to find any evidence in the record which supports the assertion that the respondent was in any way under the influence of liquor. He and some of his friends had been drinking beer. The appellant had not drunk any intoxicant. It does not appear that the driver had consumed anything stronger than beer. No witness gave any testimony that he was in any way affected by the beer or that his ability to drive carefully was in any way impaired. The evidence as to the conduct of the driver was that he drove the car so fast—which, in the opinion of the witness testifying, amounted to recklessness—that the appellant became alarmed and requested him to stop the car and let her out, telling him that she was nervous because she had just gotten over the effects of an accident and she did not want to ride with him any farther.

It is stated in the majority opinion that there was no evidence submitted by the appellant that the driver had heard what she said, nor is there any from which an inference can be drawn to that effect. But it does appear that appellant was sitting on the lap of one of the other guests in the back seat, and she was directly behind the driver. It does not appear that there was any undue noise being made by the car that would prevent the driver hearing a statement made direct to him by a frightened person a few inches immediately behind him. I am unable to see why it is not reasonable to infer that the driver must have heard what she said to him. At least this is a factual question for the trier

of fact to determine rather than the court. The majority further state:

"That the drinking of intoxicating liquor effectually destroys the faculties essential to safe driving is of such common knowledge that no one with sense will submit to the peril of riding with a driver who has recently consumed liquor. Anyone who submits to that peril assumes the risk attendant upon the journey and is guilty of contributory negligence which precludes recovery."

As to whether a person who has consumed intoxicating liquor (in this case beer) shortly prior to driving a car is unfit to do so safely, depends not only upon the person, but also upon the amount and potency of the intoxicant consumed. The evidence does not disclose that the driver was affected by the beer he drank, unless it be inferred that he was affected because he drove fast. I do not think this conclusion follows. Many drivers—entirely too many—drive too fast and to the point of being reckless in the opinion of others, and it is not attributed to them that they are affected by an intoxicant. Many drivers consume intoxicants and drive their cars safely, and it is too much to say that inability to drive safely follows consumption of intoxicants as a matter of course. If so, many guests would not hazard rides from social functions, and they would hesitate, if they did, to feel that they were assuming any risks or were guilty of contributory negligence.

The case of *Archer v. Bourne*, 222 Ky. 268, 300 S. W. 604, and several others are cited as establishing the rule to be applied in this case and to warrant the conclusion that the appellant, by becoming a guest of the respondent, was guilty of contributory negligence as a matter of law. An examination of these cases will show that, while the facts justified the conclusions reached, they are so essentially different from those we have before us as to make them clearly inapplicable.

In all of them but the last two cited, the drivers of the cars, either prior to the journeys or during the same, or both, consumed substantial quantities of strong liquor and became very visibly affected thereby, all to the knowledge of the guests, who, in some instances, participated in the drinking and who at no time made any effort to sever the host-guest relationships. The last two cases cited do not involve intoxicants. In one of them, a daughter rode with her mother, who drove the car. The mother was very near-sighted and unfit to drive, and the daughter knew of this condition. In the other case, the driver, who had driven Ford cars, acquired a new car of another make. While he was learning to drive the new one, the plaintiff, knowing of his inexperience, accompanied him. In the Utah case, it was held that the daughter was guilty of contributory negligence in knowingly riding with an incompetent driver; and, in the Wisconsin case, the court applied its doctrine of assumption of risk rather than that of contributory negligence.

The question involved in this case is whether the relationship of host and guest can be terminated by the guest during an automobile journey, and, if so, did the acts of the appellant constitute a termination or make it a question for the jury that it was terminated so that Rem. Rev. Stat., Vol. 7A, § 6360-121, no longer applied. It does not appear that this precise question had ever been considered by this court before the present case was brought here.

The case of *Parker v. Taylor*, 196 Wash. 22, 81 P. (2d) 806, is cited in the majority opinion. All that was decided by that case was that a guest assumes the risk of all injuries, except those intentionally caused by the owner or driver of the automobile. There was no question of termination of the host-guest relationship decided. The other Washington cases cited immedi-

ately following the *Parker* case were all based upon situations which arose before the host-guest statute became effective. In none of them was the question of termination of a host-guest relationship involved, but only the question of protests made on the part of guests as bearing upon the question of contributory negligence of the guests in riding with negligent drivers.

The only case which has been called to our attention involving the question before us is *Blanchard v. Ogletree*, 41 Ga. App. 4, 152 S. E. 116. There it was held that a guest may terminate the host-guest relationship, the court stating, p. 5:

"The rule [gross negligence as between host driver and guest passenger] set forth in the foregoing division of the syllabus should not apply, however, where there was what amounted to a change in the legal relationship of the parties by reason of a request made by the passenger to be permitted to leave the car prior to the accident, and the continuance of the passenger in the car was occasioned by the refusal of the driver to accede to the request."

The majority opinion states:

"When appellant accepted a ride with respondent, she became a guest for the entire journey. To hold otherwise would nullify the plain wording and intent of the host-guest statute."

According to this rule, a guest would be unable to terminate the host-guest relationship during a journey, no matter how carelessly or recklessly the host might drive the automobile in which they were riding. This is not only a dangerous rule from the standpoint of the guest, but it is also not in accord with the concept of host-guest relationship. This relationship is not contractual.

The term "guest" is defined as "a visitor entertained without pay; hence, a person to whom the hospitality

of a home, club, etc., is extended," by Webster's New International Dictionary (2nd ed.). A guest is merely the recipient of the voluntary hospitality of the host. If a host takes a guest on an automobile trip, he can terminate the relationship at will and require the guest to leave the automobile at any time. The guest does not obligate himself to go the entire contemplated journey with the host. He can demand that the host stop and permit him to leave the automobile. In either case, the host-guest relationship is thereby terminated. If the host refuses to stop the automobile, the guest does not have to imperil himself by jumping out in order to terminate the relationship. It is illogical to say that, if a guest could terminate the relationship of host and guest during a journey, this would nullify the plain wording and intent of the host-guest statute. This statute fixes the liability of the host while one is his guest, but it does not go beyond that. If we are to adopt the rule announced in the majority opinion, then the guest must sit idly by and submit to the hazard of injury or death until the driver voluntarily releases him. Grave consequences will follow the adoption of any such rule of law.

It may be conceded that the mere making of a protest by a guest to the host that he is driving in a negligent or reckless manner and that there is danger of an accident, is not sufficient to terminate the relationship, but we are not now called upon to decide that question. The nature and character of the protest might be such as to indicate to the host that the guest demanded an immediate termination of the relationship, so it might be a mixed question of law and fact as to whether there was such a termination. But, as applied to this case, I am of the opinion that, when the appellant not only protested to the respondent as to his method of driving, but also demanded that he stop the car and

let her out, then it became the duty of respondent to act upon the demand with reasonable promptness under the attendant circumstances; and, if he failed or refused to do so, the host-guest relationship was terminated, and it was his duty from then on to exercise reasonable care for the safety of the appellant. There is evidence in the record to the effect that the accident occurred three miles from the starting point and that the demand was made after the car had traveled about two miles, thus enabling a trier of fact to say that the driver had sufficient time within which to comply with the demand to stop the car and let the appellant alight therefrom.

Viewing the situation in the light demanded by the rules adopted by this court, the appellant was entitled to have her case submitted to the jury so that it could determine from the evidence whether the host-guest relationship was terminated, and, if so, whether the respondent was thereafter negligent and thereby was the cause of the injuries which the appellant sustained. The judgment should be reversed and the case remanded for a new trial.

BLAKE and MALLERY, JJ., concur with GRADY, J.