**Lee W. TODD, Appellant**

v.

**Albert JACKSON et al., Appellees.**

No. 15161.

United States Court of Appeals District of Columbia Circuit.

Argued March 18, 1960.

Decided Oct. 6, 1960.

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. Alfred M. Schwartz, Washington, D. C., for appellees Jackson and Bowling.

Mr. William E. Stewart, Jr., Washington, D. C., with whom Messrs. Richard W. Galiher and Thomas A. Kieffer, Washington, D. C., were on the brief, for appellees Broadus and Holland.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Plaintiff-appellant was a guest passenger in an automobile (licensed as a taxicab) which ran into the rear of a parked truck trailer in the city of Washington. Plaintiff was seriously injured. He instituted this suit for damages against the driver of the taxicab, its owner, and the driver and the owner of the truck and trailer. At the conclusion of the plaintiff's evidence, the District Court directed a verdict in favor of all the defendants on the grounds that, on the evidence adduced, the plaintiff was precluded from recovering as a matter of law since he assumed the risk of injury and was a joint venturer with the driver of the taxicab. This appeal followed. We affirm for the reason that on the undisputed facts here the plaintiff was as a matter of law guilty of negligence which contributed in producing his injury.

■■ Normally, of course, questions of negligence and contributory negligence are for the jury and not the court. Normally, too, "if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury. If a verdict is deemed by the court to be contrary to the evidence, judgment may be entered *non obstante veredicto*. Action by this court in the event of an appeal from such a judgment would not entail the trouble and expense of a new trial." Peigh v. Baltimore & Ohio R. Co., 1953, 92 U.S.App.D.C. 198, at page 202, 204 F.2d 391, at page 396, 44 A.L.R.2d 671. This procedure was not followed in the present case. But we think that on the facts here the trial court did not err when it refused to allow the case to go to the jury. Jackson, the driver of the cab, was clearly negligent. The conduct of the other defendants is perhaps more debatable. Be that as it may, plaintiff's obvious contributory negligence bars him from recovery against any of the defendants.

The plaintiff and defendant Jackson, a part-time cab driver, embarked together about eight o'clock one evening on a round of visits to taverns in Washington and nearby Maryland in Jackson's

rented cab. The plaintiff, as he testified, supplied all of the money used to buy gasoline for the expedition and to purchase the beer and whiskey which they consumed during the evening. They left the last tavern visited at about 11:30 p. m. and got into the cab intending to return home, according to plaintiff's testimony.[1] They became lost and about 12:20 a. m. collided on a street in the city of Washington (Bladensburg Road) with the rear of a parked truck trailer.

The evidence shows plainly and without contradiction that plaintiff and Jackson had both consumed (unaccompanied by any food) a substantial amount of alcoholic beverages during the four hours preceding the collision.[2] The plaintiff himself testified that he felt the effects of the liquor; that he noticed at the last tavern visited that Jackson was "pretty high"; that Jackson wasn't sober and he wasn't drunk; that after he noticed this they stayed at the tavern drinking beer

for what may have been a half hour longer before they entered the taxi for the return voyage to Washington, during which the collision with the parked trailer occurred; that at the time they started back Jackson was still "pretty high" and that he, plaintiff, was feeling pretty good himself and was feeling no pain. Whether or not Jackson was "drunk" when they reentered the cab to return, the plaintiff admittedly understood that Jackson was affected by the alcohol he had consumed and was not sober.[3] He nevertheless voluntarily got into the cab.

In Weber v. Eaton, 1947, 82 U.S.App. D.C. 66, 160 F.2d 577, we pointed out that one who voluntarily accompanies a driver in his car with knowledge that the driver has been drinking assumes the risk of injury through the driver's negligence brought about by the alcohol he has consumed.[4] We left open the question whether it would also be contributory negligence. In the circumstances

1. Jackson, who took the stand as a witness for the plaintiff, testified that they intended to visit another tavern on the outskirts of the city of Washington.

2. The plaintiff's testimony was that he purchased a pint of whiskey, that he and Jackson each had two drinks from the bottle, and that at the taverns visited during the evening he and Jackson each had about seven bottles of beer. Jackson's testimony was that he, Jackson, bought a half pint of gin, which was entirely consumed by him and the plaintiff; that later he also purchased two pints of whiskey, one of which provided drinks for four acquaintances and one drink or "shot" each for himself and plaintiff; that he and plaintiff each had three drinks from the other pint; and that in addition he purchased two cans of beer which he and plaintiff drank while driving. His estimate of the amount of beer consumed at the taverns was less than that testified to by plaintiff. Neither the plaintiff nor Jackson was asked to testify as to whether they had finished the pint of whiskey (the only one according to plaintiff and the second pint according to Jackson) before the accident occurred. Controlled practical road tests as reported in Bjerver and Goldberg, Effect of Alcohol Ingestion on Driving Ability, 11 Quarterly Journal of Studies on Alcohol 1, 3, 27 (1950), showed that the drinking of three

or four bottles of beer containing 3.2% alcohol by weight (4% by volume), or the drinking of three or four ounces of 90 proof distilled spirits, caused deterioration in the driving performance of expert drivers of between 25 and 30 per cent at alcohol concentrations in the blood of .04 to .06 per cent, in comparison to a control group having no alcohol, and that impairment of driving ability begins when there is an alcohol concentration in the blood of .035 to .04 per cent.

3. An analysis of Jackson's urine was made at police headquarters about an hour and 40 minutes after the collision. Although the report on this was identified, it apparently was not introduced in evidence. In any case, it is not included in the joint appendix before us. Jackson testified, however, that he was told that the urinalysis showed that he was under the influence of alcohol.

4. In Weber, there was conflicting evidence as to whether or not Weber and Mrs. Eaton had had any cocktails at all prior to the accident. In Quisenberry v. Herman, 1957, 100 U.S.App.D.C. 144, 243 F.2d 250, a jury question was also presented since there was conflicting evidence as to whether the driver had driven negligently and whether she was in fact under the influence of the alcohol she had drunk.

here, where plaintiff stated under oath that he not only purchased all the alcoholic drinks consumed by Jackson, who was without money to buy them himself, but also knew the quantity of alcohol which Jackson had consumed, and voluntarily rode with Jackson after he knew and observed that he was under the influence of intoxicating liquor, plaintiff was as a matter of law guilty of independent acts of negligence apart from any negligence of Jackson or the driver and owner of the truck trailer. See 4 (Part 1) Blashfield, Cyclopedia of Automobile Law & Practice (Permanent Ed.) § 2453; Kavanaugh v. Myers' Administratrix, 246 S.W.2d 451 (Ct.App.Ky. 1952); Franco v. Vakares, 1929, 35 Ariz. 309, 277 P. 812; Schiller v. Rice, 1952, 151 Tex. 116, 246 S.W.2d 607; Lynn v. Goodwin, 1915, 170 Cal. 112, 148 P. 927, L.R.A.1915E, 588; Packard v. Quesnel, 1941, 112 Vt. 175, 22 A.2d 164; French v. Tebben, 1933, 53 Idaho 701, 27 P.2d 474, 478; Taylor v. Taug, 1943, 17 Wash. 2d 533, 136 P.2d 176.

Plaintiff's negligent acts must also of course have been one of the contributing causes of plaintiff's injuries in order to preclude recovery by him, but here we think that it is indisputable that this is so. Plaintiff's testimony was that Jackson drove his taxicab after the stop at the last tavern while "pretty high" and "not sober." His testimony thus established for purposes of this case only, there being no evidence to the contrary, that Jackson operated his cab in the District "while under the influence of *any* intoxicating liquor" (emphasis supplied) in violation of D.C.Code § 40–609(b) (Supp. VIII, 1960), making it a crime to do so.[5] Jackson was thus guilty of negligence *per se.* Plaintiff's evidence did not undertake to explain precisely why Jackson drove his taxicab into the rear of a parked truck trailer, which, although carrying no light itself, could have been seen under the street lighting at its location at a distance of from 50 to 100 feet away.[6] Jackson himself testified categorically that the alcohol had not interfered with his vision or his ability to operate his car, but he also stated that before the collision he was looking straight ahead, that he was not talking to plaintiff, and that although the plaintiff was keeping time to music coming over the car radio, his attention was not distracted from his driving. The only possible inference is that Jackson's action in striking the trailer was caused in part, if not wholly, by the effect of the alcohol he had consumed.[7] In view of plaintiff's admission that Jackson was "pretty high" when plaintiff became a voluntary passenger in the car, and the well-known fact that the effect of drinking alcohol, even though it be not done to the point of actual drunkenness, is to dull or di-

5. This statute does not require that the operator be "drunk" or "intoxicated," only that he be under the influence of *any* intoxicating liquor that he has drunk.

6. An electrical engineer called by the plaintiff gave it as his expert opinion, based on computations made by him upon certain assumptions (the actual lighting conditions could not be reproduced), that under the highway lighting at the scene of the collision persons and vehicles would not be clearly discernible from 500 feet and that "in distances in excess of 100 feet it would be very difficult, if not impossible, for the driver to see" the parked trailer. Jackson himself testified on pre-trial deposition that he could have seen an ordinary automobile parked where the trailer was parked from a distance of a couple of hundred feet if he had been "looking direct at the car," and at the hearing he testified that although there was "mist" he could see 50 to 75 feet ahead of him on Bladensburg Road where the collision occurred. He also testified that he first observed the trailer when he was 5 feet away.

7. No other explanation for the collision is possible under the evidence. Jackson was not driving at excessive speed, he did not collide because he was prevented from turning to the left by an approaching car, he was not blinded by the headlights of an approaching car, and his own headlights were in working order. Jackson, as a witness for plaintiff, testified that his headlights were on and that there was no other traffic on the road at the time. Jackson's speed was said by plaintiff to be 25 to 30 miles per hour and by Jackson to be 30 to 35 miles per hour. The speed limit was 30 miles per hour.

·minish the senses and reflexes and the ·ability to drive safely and to cause a person to overestimate his physical and mental capacity to perform,[8] one could not reasonably conclude that the collision and Todd's injuries were not caused in part at least by Todd in making possible Jackson's consumption of alcohol and, after knowing that Jackson was under the influence of alcohol, in riding with him.

It is to be noted that there is no proof of any active negligence on the part of the operator and owner of the parked truck and trailer. These vehicles were standing motionless, in a place where they were entitled to be parked. Although the trailer displayed no light on its rear, the street on which it was parked was lighted by street lights. It is not claimed that any safety or traffic regulation promulgated by the District of Columbia authorities was violated. There was some evidence, however, tending to show, if credited, violation of an ICC regulation, 49 C.F.R. § 192.31 ·(1960), requiring the posting of lights by a motor vehicle (engaged in interstate commerce as this one was), parked on the highway within a business or residential district of a municipality, if the highway lighting is insufficient to make persons and vehicles clearly discernible at a distance of 500 feet. But even if we were to rule that the regulation was in fact violated, our holding on the issue of contributory negligence would make it unnecessary for us to decide whether this breach would constitute negligence *per se*, or sufficient evidence of negligence to go to the jury. Compare Interstate Motor Lines v. Great Western Ry. Co., 10 Cir., 1947, 161 F.2d 968; Wright v. Des Moines Ry. Co., 1941, 231 Iowa 410, 1 N.W.2d 259; Peigh v. Baltimore & Ohio R. Co., supra.

The death, bodily injury and destruction caused by drinking drivers need no emphasis here. Such drivers, and passengers who help produce their condition, are not entitled to much sympathy in the courts. We are not denying recovery here merely because the plaintiff-passenger had been drinking. Our decision rests on all the circumstances of this case, from which the inference is inescapable that plaintiff was guilty of negligence, and that his negligence assisted in the production of the accident and his injuries. Under established principles, he is barred from recovery against any of the defendants. See cases collected in 4 (Part 2) Blashfield, Cyclopedia of Automobile Law and Practice (Permanent Ed.) § 2761.

Affirmed.

FAHY, Circuit Judge (concurring in part, dissenting in part).

There was a question for the jury, it seems to me, as to whether there was sufficient highway lighting to make persons and vehicles clearly discernible at a distance of five hundred feet. If there was not sufficient lighting, then under section 192.31 of the Safety Regulations of the Interstate Commerce Commission, 49 C.F.R. § 192.31 (Supp.1960), the parked truck, which had been operated by appellee Andrew S. Broadus and which was owned by appellee R. E. Holland, Inc., should have had at least one white or amber light and one red light displayed as required in that regulation. No such lights were displayed. In this factual situation I think the jury should have been permitted to consider whether the failure to comply with the regulation —a failure which would constitute at least evidence of negligence—was the proximate cause of the accident, and that

---

·8. See Relation of Alcohol to Road Accidents (1960), British Medical Association (1960), chs. 1, 2, and 3, summarized in March, 1960, Crim.L.Rev. 152–59, and in CXXIV–9 Justice of the Peace & Loc. Govt.Rev. 130–32 (1960); Vandenack v. Crosby, 1957, 275 Wis. 421, 82 N.W.2d

307, 314; W. F. Robinson & Son v. Jones, 1934, 254 Ky. 637, 72 S.W.2d 16, 19; Taylor v. Taug, 1943, 17 Wash.2d 533, 136 P.2d 176; Davis v. Hollowell, 1950, 326 Mich. 673, 40 N.W.2d 641, 15 A.L.R.2d 1160.

accordingly the court should not have directed a verdict in favor of appellees Broadus and R. E. Holland, Inc. The danger of truck trailers parking at night on our highways without complying with such an important safety regulation is obvious, as is the danger of drinking drivers.

The court appears to reject this view primarily on the ground that the plaintiff, who was a passenger in the taxicab, was contributorily negligent because of the drinking he had engaged in with the driver of the taxicab. I have two difficulties with this basis for disposing of the case against the driver and owner of the truck. In the first place the trial court did not direct the verdict in their favor on the ground that plaintiff was guilty of contributory negligence. If the question arising from the regulation had been submitted to the jury the jury might have found for the plaintiff, in which event I do not think this court would have been justified in reversing. Secondly, though I agree the evidence of drinking showed negligence on plaintiff's part as matter of law, this negligence was not shown as matter of law to have been a proximate cause of the collision with the unlighted truck. As this court said in Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 202, 204 F.2d 391, 395,

> It cannot "be said that the failure to see an unlighted object within the range of one's headlights is negligence per se."

If this is true as to the driver of the taxicab it is true as to plaintiff, who was a passenger. It seems to me the jury should have been permitted to decide whether the factual situation brought the regulation into play and, if so, whether the failure of the truck driver to comply with it was the proximate cause of the collision, or whether plaintiff's negligence contributed to that collision as a proximate cause and, therefore, barred recovery by him.

As to the driver and owner of the automobile, appellees Jackson and Bowling,

I agree we should affirm on the ground that plaintiff assumed the risk of the consequences as of any negligence on their part.