## Lewis v. Perkins

April 25, 1950.

Rehearing denied December 5, 1950.

W. H. Spragens, Judge.

Mahan, Davis & Mahan, Edwin O. Davis, Henderson & Henderson, and Abel Harding for appellant.

Vernon Shuffett for appellee.

JUDGE HELM—Reversing.

In this action appellee, James A. Perkins, sought damages for injuries sustained in an automobile accident on Highway 68 in Taylor County on March 30, 1948. At a trial a jury awarded him $2,500. Appellant appeals.

Appellant, in his brief, says: "A reversal * * * is sought solely because the appellant believes the proof shows conclusively that James Perkins was guilty of

contributory negligence as a matter of law in riding with the appellant under the conditions shown to exist.''

On March 30, 1948, appellant (Woodson Lewis), appellee (James A. Perkins), and Joe Dix, Billy Warren, Eyvonne Thomas, and Jean Sartin, students at the college in Campbellsville, "skipped school," got into appellant's automobile, a 1945 2-seated Ford Convertible, and started to Lebanon. Appellant drove. They reached Lebanon about 10:45 a. m., went to Humpkey's, ordered beer, each boy drank three beers, and each girl drank two beers. Appellant suggested that he had better be going home. They saw a Skruggs boy driving up the street; they drove out the Springfield road trying to catch him but couldn't; they agreed to stay awhile longer; decided to go to the Jane Todd place; got there about 12; the place was not open until one; they decided to go to Ray Harmon's place; there the boys ordered four beers, drank that; they danced and then ordered four more beers. It was almost one o'clock. They went to the Jane Todd place. There they went back in the dancing hall, ordered four beers and two "cokes," danced, and later ordered four more beers. Appellant and Miss Thomas walked into the lobby and ordered beer; Miss Sartin suggested that "it is time we were going." They all got in the car and left for Campbellsville. Four miles from Lebanon they stopped at the Woodland Inn. The Dix boy and appellee went in and got some more beer. Appellant took a bottle. Driving on towards Campbellsville appellant, who drove all the way, stopped the car at Pleasant Hill church. Leaving the church, he drove over Big and Little Muldraugh hills. Just after he had come over these two hills, a mile or two beyond them, the accident complained of occurred.

Alvin Holt, of Jamestown, saw the accident. He was driving north, down a hill, around a curve. Appellant was coming in the opposite direction, driving about 35 or 40 miles an hour. Holt says he was on his right side "on the inside of the curve," as he "got into the curve I noticed a car was leaving the road and, of course, it happened pretty quick. I passed the car and looked back through the back window of my car and the car ran off." The distance "between the cars as they passed was about 25 feet. He was practically off the road when we passed."

Appellant, 23, in describing the accident, says that it was a clear day; the road was dry; he had no mechanical trouble with his car. He met the Holt car as it was coming down the hill. Holt had made the curve. Appellant "pulled over to pass him and must have gotten off the black top. * * * I slipped off the road. * * * I remember seeing the tree through the right windshield when we hit. * * * I have no theory as to what caused the accident." He could not account for running off the road. Appellant's car crashed into a walnut tree. He received only scratches and bruises. Appellee, who was sitting on the right side in the back, was severely injured; was unconscious. The two girls were severely injured and were unconscious. Joe Dix and Billy Warren were killed.

Appellee, 20, described his injuries. He says that he is unable to recall anything at all that happened on the day of the accident.

Mrs. Dennis O'Banion lives about three-tenths of a mile from the place of the accident. She saw the "young folks" in the car; they were "all waving as they passed, seemed like they were having a pretty good time."

Dr. Atkinson examined appellee at the hospital in Lebanon around 5 o'clock. He described his injuries and his examination of him. As far as he could make out, there was no evidence of intoxication. When one is rendered unconscious by a severe injury, such as appellee sustained, there may be "permanent loss of memory beginning with a number of hours before the accident to several hours after consciousness returns."

Roy Woodrum, of Harmon's restaurant; Walter Burke, of the Jane Todd place, and Luther Taylor, of the Woodland Inn, say that the party of young people came to their places and bought beer but that they didn't notice anything to indicate that they were intoxicated. Louise Parrott and Fred Parrott, ambulance drivers, and W. R. DeMoss, who helped give first aid at the scene of the accident, did not notice that appellant or any of the others were intoxicated. Armond Vaughn, a truck driver for the Greensburg Bottling Company, was at the Woodland Inn when the boys and girls stopped there. Asked if these young people were under the influence of intoxicating liquor, he said, "It is pretty

hard to say. It looked like they were drinking a little but I wouldn't say they were drunk." Vaughn says that they were a group of young people laughing and talking. He drove ahead. As he was going up Muldraugh hill, which is "pretty crooked," appellant, who was driving, passed him. Appellant "was driving all right." Vaughn stopped at the wreck, talked to appellant a minute. He wouldn't say that any of them were drunk.

J. C. Bennett came upon this accident sometime after it happened. He says that appellant had been working with the injured; looked tired; that he offered "to rest him"; that he stayed with appellant until all of the injured people had been taken away. After that, he took appellant to his home. Asked if appellant seemed to be under the influence of intoxicants, he said, "After I left him there, I noticed him more and paid more attention to him, and he seemed to be under the influence of intoxicants." On the cross-examination he was asked by the attorney for appellant, "You remember Forrest Warren and I coming out to see you and talking to you about the case?" He said, "Yes, sir." Then he was asked, "You remember telling us if he was drinking you couldn't tell it?" He answered, "I told you if he was drunk I didn't know it." Asked, "You don't think he was drunk?" he answered, "I don't think so."

Appellant states that after they left the Woodland Inn the "next thing I remember is meeting the car immediately before the accident." Appellant says that he and James Perkins, as well as the other members of the group, were together the entire time; that he drank beer each time, and that Perkins drank each time; that neither of them "missed any of the rounds."

In W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S. W. 2d 16, 19, it is said: "It is known of all men that the drinking of intoxicating liquor, though it be not done to the extent of actual intoxication, begets a spirit of recklessness, and is responsible for numerous accidents."

In Spencer v. Boes, 305 Ky. 573, 205 S. W. 2d 150, 152, we said: "It is usually a question of fact whether a guest is guilty of contributory negligence in riding in a car driven by one who is intoxicated. Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S. W. 2d 423; Whitney

v. Penick, 281 Ky. 474, 136 S. W. 2d 570. But the rule in this jurisdiction is that a guest entering an automobile knowing that the driver is so intoxicated as may cause him to be careless or indifferent to his own safety, or that of others, or incompetent to operate the car properly, is guilty of contributory negligence as a matter of law and assumes the risk incident to the operation of the car by a driver in that condition. Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918C, 646; Rennolds' Adm'x v. Waggener, 271 Ky. 300, 111 S. W. 2d 647; Spivey's Adm'r v. Hackworth, 304 Ky. 141, 200 S. W. 2d 131.''

Here, as in that case, the question is whether appellant ''was under the influence of intoxicants to such an extent that his driving was affected, and whether appellee knew, or by the exercise of ordinary care, could have known this fact.'' It was a clear day, the road was dry, and there was nothing wrong with appellant's car. He could not account for his crashing into a tree. He had no theory as to why the accident occurred. Appellee and appellant, as well as the others, had been drinking ''often and copiously'' from the time they reached Lebanon until immediately before the accident. It is obvious, we believe, that the facts and circumstances of this case point unerringly to the cause of the wreck—too much beer.

Appellee had known appellant all his life, had driven with him on many occasions, was with him and drank with him during the 4 or 4½ hours of this trip, and was, of course, fully aware of his condition. These things being true, we are constrained to hold that he was guilty of contributory negligence as a matter of law, and that the trial court, under the testimony as developed on that trial, should have directed a verdict for appellant.

The judgment is reversed for proceedings not inconsistent with this opinion.