## KAVANAUGH et al. v. MYERS' ADM'X.

Court of Appeals of Kentucky.
Feb. 15, 1952.

Stoll, Keenon & Park, Lexington, for appellants.

Wm. B. Gess, Thomas Satterwhite and Jack Mattingly, all of Lexington, for appellee.

STEWART, Justice.

This appeal is from a judgment based upon a verdict rendered in the Fayette Circuit Court, awarding appellee, plaintiff below, $5000 damages against appellants, Michael Kavanaugh and Dr. Charles N. Kavanaugh, for the death of her son, Kenneth Lee Myers, in an automobile accident. Dr. Charles N. Kavanaugh, the father of Michael Kavanaugh, was made a party hereto under the family purpose doctrine.

Appellants seek a reversal upon the sole ground that appellee's son was contributorily negligent as a matter of law on the occasion complained of.

The pertinent facts are these: The deceased, Kenneth Myers, age 19, a corporal in the United States Marine Corps, and appellant, Michael Kavanaugh, age 17, a junior at the University of Chicago, had come home to spend the 1948 Christmas holiday in Lexington. They were friends and they had been out together on other occasions in the automobile of appellant, Dr. Charles N. Kavanaugh. When Myers arrived home on furlough on the afternoon of December 22, 1948, he got in touch with Michael and they went to a dance that night at the Phoenix Hotel together with

another boy by the name of Jimmy Elliott. The three of them left the dance at intermission, rode around quite a bit in the Kavanaugh car and drank some whiskey they had brought with them. When this liquor began to run low, they "pitched in" and bought a fresh supply, part of which they drank while they continued to drive around in the car. Before they parted, they hid a pint of whiskey in some trash and cans behind the Morton School in Lexington and agreed to meet the next night to have some more "fun".

The following evening, December 23rd, Myers and Michael met as they had planned. Elliott did not join them because he had departed from Lexington unexpectedly on a trip. At approximately 10:00 p. m., Myers and Michael left the Kavanaugh residence in the Chrysler sedan of Dr. Charles N. Kavanaugh. Michael did all of the driving on this occasion. They went to the Morton School where they had hidden the whiskey. Here Myers left the car and got the bottle. They then drove to Saloshin's Drug Store at Clay Avenue and East Main Street in Lexington. They parked there near the corner for about thirty minutes, ordered coca colas and drank about two-thirds of the pint of whiskey. While they were at the drug store another automobile with four young girls in it drove up and stopped near them. Some of the girls, who knew young Kavanaugh, came over to his car and one girl was offered a drink, which she refused. The girls all stated they saw the two boys pour whiskey into the coca colas and drink the mixture. Other witnesses, acquaintances of Myers or Michael who happened to pass by the drug store, testified that they saw the boys drinking coca colas and whiskey.

Soon thereafter, when the girls' car drove away, the boys decided to give chase to them. The Kavanaugh car followed them and the two machines proceeded out the Richmond Road. About two miles out on this road, the girls turned their car into the entrance to the City of Lexington reservoir, and the boys drove up near them and stopped. The girls testified their car had run out of gasoline. Both boys got out of their car, talked a few minutes with the girls, and, according to Michael, he and Myers drank the rest of the whiskey. At the trial, Michael was asked, "Were you drunk?" His answer was: "We were feeling what we had to drink."

About this time, the two boys thought they heard a county police car coming. Myers said: "Come on, Mike, let's get away, here comes the county patrol." They hurriedly got in their automobile and headed back in the direction of Lexington. Very shortly, as Michael testified, the car was making a speed of around seventy miles per hour. Young Kavanaugh also stated that Myers kept urging him to drive faster, saying: "Hurry up, Mike, they (the police) are still behind us." Actually, it developed that the police were not in pursuit of them, although they believed such was happening. Kavanaugh proposed to Myers that he turn off the Richmond Road onto Woodspoint Road which runs into a clover-leaf intersection just south of Richmond Road. At the clover-leaf intersection they agreed they would turn out their lights, so that the police would not know which direction they had gone. When the boys reached the intersection of Chinoe Road with Richmond Road they thought it was Woodspoint Road and they made a left turn at this point. They continued to drive south on Chinoe Road at a high rate of speed until they approached the first intersection which they thought was the clover-leaf on Woodspoint Road. The Woodspoint intersection has a street leading straight through, but Chinoe Road bears gradually to the left. At this place Michael turned out the lights and proceeded straight ahead, with the result that the automobile ran over the curb on the side of the street, to their right, crossed a grass plot and struck a tree with great force. The outcome of the accident, which occurred at 10:45 p. m., was that young Kavanaugh received a fractured left arm and severe cuts and bruises on his head, and Myers was injured to the extent that he died on December 26, 1948.

The only question we need consider is whether appellant, Michael Kavanaugh, was under the influence of intoxicants to such an extent that his driving was affected, and whether Kenneth Lee Myers knew,

or by the exercise of ordinary care could have known, this fact.

It is well settled in this jurisdiction that a guest riding in an automobile with knowledge that the driver is so intoxicated as to cause him to be careless or indifferent to his own safety or that of others, or incompetent to operate the car properly, is guilty of contributory negligence as a matter of law and assumes the risk incident to the operation of the car by a driver in that condition. Lewis v. Perkins, 313 Ky. 847, 233 S.W.2d 984, Spencer v. Boes, 305 Ky. 573, 205 S.W.2d 150. In W. F. Robinson & Son v. Jones, 254 Ky. 637, 72 S.W.2d 16, 19, we made this statement on the subject of drinking while driving: "It is known of all men that the drinking of intoxicating liquor, though it be not done to the extent of actual intoxication, begets a spirit of recklessness, and is responsible for numerous accidents."

Usually it is a question of fact whether a driver was so far intoxicated at the time of an accident as to affect his ability to operate the car, and whether his passenger had any cause, in the exercise of ordinary care, to be apprehensive on that account for his own safety. 4 Blashfield's Cyc. of Automobile Law, Permanent Edition, Sec. 2453. See also Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423; Whitney v. Penick, 281 Ky. 474, 136 S.W. 2d 570.

The evidence is overwhelming that decedent was riding in a car knowing full well that the driver was drinking. More than that, Myers drank with young Kavanaugh and both drank to the extent that they could feel the effects of their liquor. One of the girls put it this way: "I don't think either one of them was drunk, but you could tell they had been drinking." Each not only participated in every act performed by the other but Myers either urged or approved the actions of Michael that brought about the accident. It is obvious that the drinking cannot be separated from the cause of the wreck. Under the circumstances Myers was guilty of contributory negligence which precludes recovery of damages for his death. The trial court, under the testimony developed at the trial, should have directed a verdict for appellants.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.