**Margaret FLEMING et al., Plaintiffs,**

v.

**Mufid K. AYOUD, Defendant.**
**Civ. A. No. 1381–59.**

United States District Court
District of Columbia.
June 21, 1962.

---

Alvin L. Newmyer, Jr., and Armand Newmyer, Washington, D. C., for plaintiffs.

John L. Laskey, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This case presents some aspects of the doctrine of the last clear chance. It is before the Court at this time on the plaintiffs' motion for a new trial. The action was brought to recover damages for personal injuries sustained by a pedestrian, who claims to have been struck by the defendant's automobile while she was walking across a street intersection. After a trial on the merits, the jury found a verdict in favor of the defendant and the plaintiffs move for a new trial. The principal ground of the motion and the only one that merits discussion is that the Court declined to instruct the jury on the doctrine of the last clear chance.

The undisputed facts are that the plaintiff, Margaret Fleming, was standing on the sidewalk at the southwest corner of 14th Street and Missouri Avenue, in the City of Washington, intending to walk across Missouri Avenue to the northwest corner. She looked to the left and saw the defendant's automobile about 200 feet away, proceeding in an easterly direction. She then turned and looked to her right and determined that there was no danger from that side. Without again glancing to the left, she stepped off the curb and walked northerly in an unmarked cross-walk. By that time, however, the defendant's automobile had traveled a longer distance than she had apparently anticipated. After she proceeded about six or seven feet, an impact took place between her and the defendant's vehicle. She came in contact with the right front fender of the automobile at a point immediately behind the headlight.

Prior to the submission of the case to the jury, the defendant's counsel abandoned the defense of contributory negligence, because in this case it was nothing but the converse of the defendant's contention that he had not been guilty of any negligence and it added nothing to the issues. In the last analysis the sole question was whether the defendant had been negligent and whether he could have avoided the collision. Counsel for the plaintiff, nevertheless, requested the Court to instruct the jury on the doctrine of the last clear chance. The Court declined to do so: first, because this doctrine is applicable only as a rejoinder or rebuttal to the defense of contributory negligence; and, second, because the only issue was whether the defendant had been guilty of initial or primary negligence, and there was no basis in the evidence for any contention that he might have been thereafter guilty of any additional failure, bringing the doctrine of the last clear chance into play. Counsel for the plaintiff objected to this ruling and now bring it up for consideration again on their motion for a new trial.

The Court submitted to the jury solely the issue of the defendant's negligence *vel non*, as well as, of course, the issue of damages. In instructing the jury, the Court, among other things, defined the terms "negligence" and "proximate cause", read the regulation concerning

a pedestrian's right-of-way and explained its meaning and significance, and then continued:

> "So, there is just one question in this case so far as the plaintiff's right to recover is concerned: did she start to step off the sidewalk at a time when the defendant's automobile was too close to her to make it possible for him to stop? If so, then the verdict should be for the defendant. On the other hand, if at the time she started to step off the sidewalk, if the defendant, had he used due care and acted promptly, had a sufficient opportunity to slow down or stop so as to prevent the accident, if he did have that opportunity and still failed to prevent the accident, then he is liable and your verdict should be for the plaintiff."
> (Tr. p. 23)

A decision on the question presented on this motion requires a consideration and a review of the purpose, the development, and the application of the doctrine of the last clear chance. This principle originated and grew as a means of alleviating the rigor of the rule of contributory negligence, which completely barred the right of a plaintiff to recover, no matter how great the degree of the defendant's negligence might have been, if the plaintiff was also guilty of negligence. Its sole purpose and function is to serve as a rebuttal or a rejoinder to the plea of contributory negligence if this defense is interposed and is supported by evidence. It comes into play only if it is found that the plaintiff was guilty of contributory negligence, and yet that thereafter the defendant was in a position to avoid the accident and the plaintiff was oblivious to his danger or was unable to extricate himself from the peril into which he had placed himself by his own carelessness. If the only question is whether the defendant was guilty of initial or primary negligence that was a proximate cause of the accident, there is no room or role for the doctrine of the last clear chance. If interjected, it would serve only to complicate or confuse the issues.

These basic principles can be illustrated by a supposititious case. Suppose A is driving an automobile at an excessive rate of speed and is, therefore, guilty of primary or initial negligence; B, a pedestrian, intending to cross the street, steps into the roadway, although a red traffic light bars his path; B is then struck by A's vehicle. B sues A, but because B was guilty of contributory negligence, he may not recover. Suppose, however, A had been able to see the peril in which B was placed and to observe that B was either oblivious to his danger or was unable to extricate himself, and yet A heedlessly kept on his course and hit B, although A might have been able to prevent the accident. In this situation the doctrine of the last clear chance comes into play and would impose liability on A in spite of B's contributory negligence. Were the law otherwise, a pedestrian in B's position would be practically an outlaw from the standpoint of civil liability and could be run down with impunity merely because he was guilty of contributory negligence. Such an outcome would be abhorrent and intolerable. This is the reason why the beneficent doctrine of the last clear chance developed.

That this principle is to be used solely as a means of overcoming the defense of contributory negligence, has been generally recognized. Thus, Restatement of the Law of Torts, Section 479, Comment a, in discussing "Defendant's Last Clear Chance", states:

> "a. The rule stated in this Section is applicable only when the plaintiff has negligently placed himself in a position of peril from which he cannot, at the time of the accident, extricate himself."

One of the leading commentators on the law of torts, Prosser on Torts, p. 292, in discussing the basis of the doctrine, makes the following statement:

> "The real explanation would seem to be a dislike for the defense of

contributory negligence which has made the courts rebel at its application in many situations, and accept without reasoning the conclusion that the last wrongdoer is necessarily the worst wrongdoer, or at least the decisive one, and should pay."

One of the early cases in which this principle originated, although not then denominated by its present picturesque appellation, was a decision of the Court of Exchequer, rendered in 1842, Davies v. Mann, 10 Meeson & Welsby 545. The action had been brought to recover damages for the killing of the plaintiff's donkey by being run down by the defendant's wagon and horses. The case was tried at Assizes. The evidence showed that the plaintiff turned the donkey into a public highway to graze and that the defendant's wagon drawn by a team of three horses, struck and killed the animal. The Judge instructed the jury that:

"* * * though the act of the plaintiff, in leaving the donkey on the highway so fettered as to prevent his getting out of the way of carriages travelling along it, might be illegal, still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant; and his Lordship directed them, if they thought that the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff."

The jury returned a verdict for the plaintiff. The judgment was affirmed on appeal. Lord Abinger stated:

"The defendant has not denied that the ass was lawfully in the highway, and therefore we must assume it to have been lawfully there; but even were it otherwise, it would have made no difference, for as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the con-

sequences of his negligence, though the animal may have been improperly there." (p. 548).

Baron Parke was even more emphatic (p. 548):

"* * * although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

In a later case the House of Lords enunciated this principle as an accepted rule of law, in the following manner, Radley v. London and North Western Railway Co., [1876] Appeal Cases, 754–759:

"The first proposition is a general one, to this effect, that the Plaintiff in an action for negligence cannot succeed if it is found by the jury that he has himself been guilty of any negligence or want of ordinary care which contributed to cause the accident.

"But there is another proposition equally well established, and it is a qualification upon the first, namely, that though the Plaintiff may have been guilty of negligence, and although that negligence may, in fact, have contributed to the accident, yet if the Defendant could in the result, by the exercise of ordinary care and diligence, have avoided the mischief which happened, the Plaintiff's negligence will not excuse him."

As there are slight variations in the definition and the application of the doctrine of the last clear chance among the States in this country, it seems useful to confine this discussion to the decisions of the District of Columbia Circuit. The leading decision in this jurisdiction is Dean v. Century Motors, 81 U.S.App. D.C. 9, 154 F.2d 201, in which the opin-

ion was written by Judge Wilbur K. Miller (now Chief Judge):

"The doctrine presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident. It is not applicable if the emergency is so sudden that there is not time to avoid the collision, for the defendant is not required to act instantaneously."

This case has been frequently cited as authoritative. The foregoing statement was quoted only recently in Conlon v. Tennant, 110 U.S.App.D.C. 140, 289 F. 2d 881, 882. Among other decisions of the Court of Appeals for the District of Columbia applying this principle are: Gay v. Augur, 97 U.S.App.D.C. 336, 231 F.2d 495; Richardson v. Gregory, 108 U.S.App.D.C. 263, 265, 281 F.2d 626; Rankin v. Shayne Bros., Inc., 98 U.S. App.D.C. 214, 217, 234 F.2d 35.

In Gay v. Augur, supra, it is made clear that the duty of a defendant under the doctrine of the last clear chance arises subsequently to what is called his "initial" or "primary" negligence, and is not connected with it. It is there stated that "The last clear chance is a chance that arises after the peril has developed."

The authorities clearly demonstrate that the purpose of the doctrine of the last clear chance is to avoid the defense of contributory negligence. It has no other function. Moreover, it comes into play only in respect to an act, or failure to act, on the part of the defendant, occurring subsequently to his initial or primary negligence. In this case the defense of contributory negligence was abandoned and the claim of negligence asserted against the defendant involved what might be deemed his initial or primary negligence and not some failure on his part occurring later.

Accordingly, the Court adheres to its earlier ruling that the doctrine of the last clear chance was not properly in issue in this case.

The suggestion made by counsel that the abandonment of the defense of contributory negligence was an improper amendment of the pretrial order, is untenable. A litigant may always abandon a claim or a defense. What he may not do, is to interpose a new contention or modify one contained in the pretrial order if his opponent is prejudiced by such action.

The contention that the verdict of the jury was contrary to the weight of evidence is equally lacking in any basis. The Court is of the opinion that not only was the verdict of the jury sustained by substantial evidence, but that it was supported by the weight of evidence.

The motion for a new trial is denied.