**Arthur REID, Plaintiff,**

v.

**Edward B. LYON et al., Defendants.**

**Civ. A. No. 481–66.**

United States District Court
District of Columbia.

Dec. 11, 1967.

Dorsey K. Offutt and John G. Saul, Washington, D. C., for plaintiff.

Laurence T. Scott, Washington, D. C., for defendants.

## OPINION

HOLTZOFF, District Judge.

In this case the jury returned a verdict in favor of the plaintiff for the sum of $75,000. The defendant moves for a new trial on two principal grounds. First, it is contended that the Court should not have instructed the jury on the doctrine of last clear chance, in that the doctrine was inapplicable under the evidence in this case. Second, it is contended that the verdict is excessive.

The basic facts in this case are simple. The defendant was driving an automobile southerly on Sixth Street, Northwest, in Washington, D. C. It was in the evening when it was dark. It was raining. The plaintiff was walking across Sixth Street at its intersection with G Street. He was proceeding from east to west along the southerly line or south of the southerly line of the intersection. The defendant's automobile struck the plaintiff.

The plaintiff contended that when he stepped off the sidewalk and started to walk across the light was green in his favor. On the other hand, the defendant contended that as he crossed the intersection the light was green in his favor. There was just a clear conflict as to who was proceeding against the red light. Obviously, if the plaintiff was proceeding on a green light, there would be no problem in this case. The defendant would be liable. The jury had a right to find, and it would have been reasonable for it to find that actually it was the plaintiff who walked across on the red light, because there was a disinterested witness who was driving a car easterly on G Street and who testified that he stopped for a red light at the Sixth Street intersection and while waiting for the light to turn he saw the plaintiff step off the sidewalk on the other side of Sixth Street and walk across Sixth Street against a red light.

The defendant testified that he did not see the plaintiff until just a moment before the plaintiff was struck. Yet the plaintiff had been walking all

the way across from the east side of Sixth Street, and had passed the center of Sixth Street before he was hit. The jury had a right to find from the evidence that the defendant could have seen the plaintiff under the conditions then prevailing. Since the disinterested witness to whom the Court has just referred saw the plaintiff from the other side of Sixth Street, the jury could have found that the defendant could have done likewise.

■ It is argued, however, that the plaintiff did not reach a position of peril under which the doctrine of last clear chance was applicable until after the plaintiff passed the safety zone located in the center of Sixth Street. It is contended by defense counsel that the defendant had a right to assume that the plaintiff would stop in the safety zone, and that, therefore, the plaintiff was not in a position of peril from which he could not extricate himself.

The Court is of the opinion that it was for the jury to determine the point at which the position of peril began. The jury could well have found that from the moment the plaintiff stepped off the sidewalk against a red light, he was in a position of peril and was in that position even before he reached the center of the street.

The Court is of the opinion that it would have been entirely reasonable for the jury to conclude that when a motorist sees a pedestrian in his path walking across a red light, he should have watched that pedestrian and assumed that the pedestrian was in a position of peril, and that the motorist had no right to assume that the pedestrian would necessarily stop. This is a question for the jury.

The Court, on analyzing its instructions to the jury on the doctrine of the last clear chance, is unable to find any defect in the instruction. It might be well to make a brief reference to the authorities.

■ The leading case on the doctrine of the last clear chance in this jurisdiction is Dean v. Century Motors, Inc., 81 U.S.App.D.C. 9, 154 F.2d 201. At page 11, 154 F.2d at page 202, Judge Wilbur Miller explained this doctrine as follows:

"The doctrine presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident."

He then adds:

"It is not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously."

This Court, in instructing the jury on the doctrine of the last clear chance used this last statement of the Court of Appeals.

I had occasion to summarize this doctrine in Fleming v. Ayoud, D.C., 206 F.Supp. 860–862. In that case my summary was as follows:

"These basic principles can be illustrated by a supposititious case. Suppose A is driving an automobile at an excessive rate of speed and is, therefore, guilty of primary or initial negligence; B, a pedestrian, intending to cross the street, steps into the roadway, although a red traffic light bars his path; B is then struck by A's vehicle. B sues A, but because B was guilty of contributory negligence, he may not recover. Suppose, however, A had been able to see the peril in which B was placed and to observe that B was either oblivious to his danger or was unable to extricate himself, and yet A heedlessly kept on his course and hit B, although A might have been able to prevent the accident. In this situation the doctrine of the last clear chance comes into play and would impose liability on A in spite of B's contributory negligence. Were the law otherwise, a pedestrian in B's position would be practically an outlaw from the standpoint of civil liability and

could be run down with impunity merely because he was guilty of contributory negligence. Such an outcome would be abhorrent and intolerable. This is the reason why the beneficent doctrine of the last clear chance developed."

In conclusion, the Court is of the opinion that the doctrine of the last clear chance was properly applied, and the jury was correctly instructed concerning it.

We come now to the question of the amount of damages awarded by the jury, namely, $75,000. In this case the medical and hospital expenses were in excess of $14,000; loss of wages to the date of trial was $7,000. In other words, the special damages amounted to over $21,000. Deducting this figure from the amount of the verdict, which was $75,000, there is left as an award for pain and suffering and for permanent injuries the sum of approximately $54,000.

The extent of the injuries is not disputed. Both the plaintiff's legs were broken; that is, bones in each of his two legs were fractured. He was in the hospital over eight months, and was subjected to various operations and other medical and surgical procedures. He has not made a full recovery and is permanently crippled, at least partially. His right leg has been shortened, and he has a permanent weakness in both legs. He wears a brace on one leg, and he walks on crutches. He has lost earning power. While the doctor expressed the opinion that eventually he would return to work, there is a question, and the jury could so find, whether he could resume his previous occupation, which was that of a shoe repair man. Unlike the old time cobbler who worked seated at a bench with a hammer in his hand, the modern shoe repair man stands up at a machine continuously and works on that machine. Whether the plaintiff, in view of the weakness of his legs and the use of crutches, could resume that particular occupation may be questionable.

The Court is of the opinion that $54,000 for the pain and suffering that he underwent and for the permanently crippling effects of his injuries is not excessive. The award is not beyond the realm of reason. It does not shock the conscience of the Court. In the opinion of the Court, while it is large, it is entirely reasonable.

Obviously we cannot be guided by precedents in determining whether a particular amount of damages is excessive. Nevertheless, it may be of interest as throwing some light on the question to note what awards have been given and sustained for somewhat similar injuries.

In Trowbridge v. Abrasive Co. of Philadelphia, 190 F.2d 825, decided by the Court of Appeals for the Third Circuit, a verdict in excess of $126,000 was upheld in an action in which the plaintiff sustained serious injuries to both legs, although the legs were saved and there was no amputation.

In Solomon Dehydrating Co. v. Guyton, 8 Cir., 294 F.2d 439, a verdict for $74,000 was held not to be excessive in a case in which the plaintiff sustained severe fractures of one leg, resulting in a permanent deformity of the leg and of the hip.

In Lawrence v. Norfolk Dredging Co., 4 Cir., 319 F.2d 805, at 808 and 809, a verdict of $100,000 for a fracture of a femur resulting in complications and permanent disabling conditions was held not to be excessive.

These cases are introduced only by way of illustration.

The Court reaches the conclusion that the verdict of the jury was not excessive and was within the realm of reason and there is no basis for disturbing it.

The motion for a new trial is denied.