**Reginald LAW, Appellant,**

**v.**

**VIRGINIA STAGE LINES, INC., A Corporation, Appellee.**

**No. 22017.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 21, 1970.

Decided May 13, 1971.

---

Bazelon, Chief Judge, dissented and filed opinion.

Mr. Edward Jasen, Washington, D. C., with whom Mr. Robert Cadeaux, Washington, D. C., was on the brief, for appellant.

Mrs. Betty Southard Murphy, Washington, D. C., with whom Messrs. Richard R. Paradise and Frederick R. Tansill, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

This appeal from a jury award of $6,-000 in a negligence case challenges the District Court's grant of a motion for judgment *non obstante veredicto* and, alternatively, for a new trial because of the insufficiency of the evidence to support the jury finding of liability. The record suggests that the trial court was disposed to grant appellee's request for a directed verdict at the close of the evidence but deferred to repeated admoni-

tions from this court that the better practice in such situations is to let the case go to the jury and, if it finds liability, to set it aside.[1] This record may be said to present a test of the credibility of the policy we have pressed upon the District Court, since an actual, albeit unexpected, jury finding of liability generates some forces in and of itself against judicial nullification, one of which is certainly concern about appellate reversal. We find that the trial court in this instance would have been warranted in keeping the case from the jury; and, accordingly, we affirm the grant of judgment n. o. v.

I

Appellant testified that, in the interval between the time he left work at 4:00 P.M., and the happening of the accident at a few minutes after 10:00 P.M., he had drunk three cans of beer and three drinks of bourbon. Setting out, at long last, for home in his car, he needed to respond to a call of nature; and, accordingly, he got out of his car at 10th Street and New York Avenue, N.W., to go for this purpose to the Greyhound Bus Terminal, which is located on the southeast corner at 12th Street and New York Avenue. His route took him along the north side of Eye Street into the 1100 block, and, presumably under the pressures peculiar to his particular errand, he decided to cross Eye Street in the middle of the block. Eye Street is a one-way street going east in that block, but appellant (who is blind in one eye) testified that he looked in both directions, that it had just stopped raining, and that he saw no vehicles approaching. Crossing the street at what he said was a normal walking speed of two or three miles per hour, he was more than half-way across the forty-foot street when he suddenly became conscious of headlights and was struck by a vehicle which he never saw.

Appellant next called as a hostile witness the driver of appellee's bus. This witness testified that he had come out from a bus exit of the Trailways Bus Terminal at 12th Street, going north to the next intersection (12th and Eye), where he stopped because the red light was against him. When the light changed, he turned east on Eye Street. It was raining hard; the windshield wipers were going; and visibility was not more than half a block. After the bus went some 50 to 70 feet, he suddenly saw a man, running fast because it was raining and at a diagonal angle from the north side of the street. The man was some six or seven feet away when he first saw him, and he jammed on his brakes to make an emergency stop. This was unavailing, and man and bus came together.

Appellant called as a witness Officer Howe of the Accident Investigation Unit, who arrived at the scene at 10:40 P.M. The bus was halted in the street 24 feet south of the north curb. Appellant had by this time been taken to the hospital, but Officer Howe testified that the bus driver, as recorded in Officer Howe's notes, said that he saw a man "running out at me. I applied the brakes and just bumped him. I wasn't going fast— just made a turn." Officer Howe then went to the hospital to see appellant but could get no intelligible responses to his

1. In Peigh v. Baltimore and O. R. Co., 92 U.S.App.D.C. 198, 202, 204 F.2d 391, 396 (1963), we said, in reversing a directed verdict:

"* * * we think it well to add that in a case of this kind, if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury. If a verdict is deemed by the court to be contrary to the evidence, judgment may be entered *non obstante veredicto.* * * *"

*See also* Seganish v. District of Columbia Safeway Stores, 132 U.S.App.D.C. 117, 406 F.2d 653, 658 (1968); Morse v. Moretti, 131 U.S.App.D.C. 158, 403 F.2d 564, 565 (1968); Todd v. Jackson, 109 U.S. App.D.C. 7, 8, 283 F.2d 371, 372 (1960); Williams v. Greenblatt, 106 U.S.App.D.C. 335, 336, 272 F.2d 564, 565 (1959); Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 103, 143 F.2d 142, 143 (1944). The procedure is authorized by Rule 50(b), Fed.R.Civ.P.

questions, since appellant was "very incoherent and mumbling." Appellant, said the witness, gave off a strong odor of alcohol, and the hospital chart indicated "alcoholic intoxication."

Appellant then presented a doctor who answered a hypothetical question to the effect that pure alcohol has no odor and that intoxication can only be determined from neurological or blood tests. Appellant's last witness was a supervisor from his place of employment who testified that appellant had presented no problems in terms of intoxication during the two years he had been in his current employment.

Appellant's proof having closed, a motion for a directed verdict was made, which the court took under advisement.[2] The only witness for the defense was Officer Hoefer, who investigated the accident in company with Officer Howe. He testified that the front of the standing bus was 116 feet from the 12th and Eye Street intersection. His notes were that the bus driver said that the man "came running out at him, and he applied the brakes and that he just bumped or brushed him." Officer Hoefer also went to the hospital and his experience there with appellant was the same as Officer Howe's, finding him incoherent, smelling strongly of alcohol, and apparently intoxicated. Officer Hoefer also said that he could not remember whether it was still raining when he arrived at the scene, but that the streets were wet.

The defense motion for a directed verdict was renewed at the close of the evidence, and the court stated its purpose to continue it under advisement. Appellant asked the court to instruct the jury on the doctrine of last clear chance, but the court refused because, in its view, the evidence did not justify the invocation of that doctrine as a basis of liability. After the jury brought in its verdict for appellant, the court granted the relief complained of here upon its finding that "the evidence conclusively established the negligence of the plaintiff and that it was the proximate cause of his injuries, and did not tend to establish negligence on the part of the defendant, and was such that a jury of reasonable men could not properly have reached the verdict which was reached. * * *"

## II

At the close of appellant's case, the evidence adduced, taking it in the light most favorable to appellant, must have appeared to the District Court as it does to us. Appellant, who was blind in one eye and had been engaged in a substantial amount of drinking, in his haste to get to the toilet facilities of the Greyhound Bus Terminal as quickly as possible, crossed a downtown street in the middle of the block at night. A bus with its lights on had just pulled away from a red-light stop at the intersection at the end of the block, and had attained no great speed as yet when the driver suddenly saw appellant coming towards him only six or seven feet away. The driver immediately jammed on his brakes, but it was impossible to keep bus and pedestrian from meeting.

The Traffic and Motor Vehicle Regulations of the District of Columbia provide that "[E]very pedestrian crossing a roadway at any point other than a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon a roadway." Appellant testified that he looked to see if anything was coming when he started across the middle of the street but saw nothing. It is plainly evident from the record that the trial judge found this incredible, and we can understand why. Appellant was thus reduced to claiming that the evidence

2. The trial court's comment was as follows:

"THE COURT: I will take your motion under advisement and we will go on. Since the jury has heard this much, they might as well hear the rest."

showed that the bus driver should have seen appellant in time to have taken action to avert the injury. But we agree with the District Court that the showing made in appellant's own case negatives the application of any such theory of liability.

Why the jury on this evidence brought in the verdict it did is not a question which lends itself to logical analysis. Its answer presumably resides in the mysteries of the perspective in which jurors view individual human conduct, on the one hand, and corporate bus companies, on the other. All we can be sure of is that the law in its wisdom has invested trial judges with the power to correct juries who base their verdicts on considerations not embodied in the evidence. Our only inquiry is as to whether the trial court in this instance, having first given the jury the opportunity to bring in a proper verdict on its own, thereafter exercised unacceptably the power it possesses to overturn the verdict which was brought in.

■ We think the District Court would have been fully justified in granting the defense motion for a directed verdict at the close of appellant's case. His showing was realistically consistent only with a conclusion of patent negligence on his part; and it provided no substantial basis for a finding that appellee was negligent. Indeed, as we have said in the past, where "the evidence as to primary negligence produced by the plaintiff is so weak that to submit it to a jury would be to allow them to speculate as to the defendant's negligence the question of contributory negligence does not enter * * *;" and in such a case a defense motion made at the conclusion of the evidence should be granted, or, when the trial judge lets the matter go to the jury, a judgment n. o.

v. should be entered if there is a finding of liability. Capital Transit Co., Inc. v. Gamble, 82 U.S.App.D.C. 57, 58, 160 F. 2d 283, 284–285 (1947). *See also* Faucett v. Bergmann, 57 App.D.C. 290, 22 F.2d 718 (1927), where this court, on facts strikingly similar to those involved here, approved the trial court's direction of a verdict.[3]

■■ Appellant's invocation of last clear chance does not, we think, dictate a different conclusion. We note preliminarily that, as it turned out, the jury proved to be in no need of a last clear chance instruction to reach the result it did, although appellant's counsel had pressed this theory as of critical importance to his client and as the basis upon which he was entitled to get to the jury. We read the evidence as did the trial judge, namely, there was not the requisite room in it for the play of last clear chance. That doctrine has generally been regarded as an ameliorative one applicable in the circumstances where both parties to an accident have some portion of culpability, but the defendant is shown to have had some capacity to avert the disaster by alternatives reasonably available at the last moment. Dean v. Century Motors, Inc., 81 U.S. App.D.C. 9, 154 F.2d 201, 202 (1946). And, as we said in that case, where the doctrine might otherwise be applicable, it is not so "if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously."

It is argued that the bus driver should have blown his horn, and that such a warning would have deflected appellant from his collision course with the approaching bus. The testimony, however, establishes to the satisfaction of any reasonable mind that the bus driver chose the only—and the best—alterna-

3. The plaintiff's testimony in *Faucett* was to the effect that he crossed the street at a distance from the corner crossing, and that, although he looked, he did not see the approaching truck until it was five feet from him. It was asserted that the truck driver failed to blow his horn, but this court said that, under the circumstances testified to, namely, the plaintiff's stepping in front of the truck when it was only a few feet away, could not have made such failure negligence on the driver's part.

tive effectively open to him, and that was to jam on the brakes the moment appellant suddenly materialized in front of him.

 It is of course true that conflicts in the evidence are normally to be resolved by the jury. But this rule is to be administered in the realization that accounts by witnesses of the same incident rarely, if ever, mesh together exactly. It is the function of the judge to identify those conflicts which are serious and substantial, and jury resolution of which is, accordingly, crucial to the issue of liability. We find no palpable error on the part of the District Court in its discharge of that function here. The case, in the posture in which appellant's evidence left it, was not one which could reasonably support a finding of negligence on the part of appellee. It need not have gone to the jury at all, except as the court heeded our periodic suggestion that this course can save a lot of judicial time and trouble. Once the jury confounded this policy, as it did by its verdict here, the court's duty was to act as it did. It is our duty, on this record, to sustain that action.[4]

The grant by the District Court of judgment *non obstante veredicto* is

Affirmed.

BAZELON, Chief Judge (dissenting):

With deference, I think this court, like the trial judge, has usurped the jury's function in assessing the credibility of witnesses. The testimony in this case was in conflict concerning the critical questions of the speed of the bus and the speed of the pedestrian just prior to the collision. That conflict was both serious and substantial, and the jury's resolution was crucial to the issue of liability. I agree with appellant that the evidence of the bus driver's negligence was sufficient to raise a jury question, and that the trial judge erroneously refused to instruct the jury that contributory negligence is no bar to recovery if the driver has the "last clear chance" to avoid the accident.

For the purpose of reviewing this judgment, we must of course consider the evidence in the light most favorable to appellant. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142 (1944). It is undisputed that Mr. Law had crossed more than twenty feet of Eye Street before he was seen by the bus driver. It is also undisputed that his entire path was visible to the driver from the time the driver turned into Eye Street.[1] If, as Mr. Law testified, he was walking at about two miles an hour, then he was in the street, within the driver's field of vision, for some seven seconds before he was seen. On that basis the jury could well find that the driver was negligent in failing to keep a lookout adequate to spot pedestrians in the street ahead of him.[2]

---

4. Our decision is not inconsistent with prior collision cases decided by this court, in which the issue of negligence was required to be submitted to the jury. In each of those cases the quantum of evidence that the driver actually could have seen the pedestrian had he been keeping an adequate look-out was much greater than in the matter before us. *See* Kuzminsky v. Woodard, 113 U.S.App.D.C. 238, 307 F.2d 195 (1962) (testimony of driver and eyewitness indicate that driver could have spotted pedestrian in time to avoid accident); Tyler v. Starke, 76 U.S. App.D.C. 42, 128 F.2d 611 (1942) (driver testified that he saw pedestrian from a distance of forty feet while traveling at 18 to 20 miles an hour); Heurich Brewing Co. v. McGavin, 56 App.D.C. 389, 16

F.2d 334 (1926) (eyewitness following driver testified that pedestrian could be seen 25 to 30 feet from driver's car while driver was traveling at 8 to 10 miles an hour); Terminal Taxicab Co. v. Blum, 54 App.D.C. 357, 298 F. 679 (1924) (pedestrian testified that he saw driver heading in his direction 200 feet away traveling at 19 miles an hour, with nothing between them to obstruct vision.)

1. The driver testified that despite the weather conditions, he could see for at least half a block ahead of him. Mr. Law's path was at all points less than half a block from the corner at which the bus entered Eye Street.

2. Kuzminsky v. Woodard, 113 U.S.App. D.C. 238, 307 F.2d 195 (1962); Tyler v.

It was of course open to the jury to discredit Mr. Law, and to believe the driver's testimony that Mr. Law ran into the street. If the pedestrian entered the driver's field of vision suddenly, then there would be no basis for the conclusion that the driver failed to keep an adequate lookout.[3] But the resolution of that conflict in the testimony is for the jury, and not for the trial judge or the appellate court. I do not find it "inherently incredible" that Mr. Law was walking slowly after a few drinks on a rainy night, and I see no basis for setting aside his testimony on that ground. I do not suggest that the evidence of the driver's negligence was so strong that it compels a finding of liability. But in my view the evidence clearly permits such a finding, and our jurisprudence entrusts the decision on that matter to the jury. Mr. Law should not be barred from recovery by this court's speculation that the jury may have based its verdict on a general attitude toward corporate bus companies, rather than on permissible inferences from the evidence.

If the jury found that Mr. Law's own negligence contributed to the accident,[4] they could have found further that the bus driver had the last clear chance to avoid the collision, either by slowing down or by sounding his horn.[5] Therefore, it was error for the trial judge to grant the motion for judgment n. o. v. on the ground that the evidence conclusively established the negligence of appellant.

Since the trial judge wisely submitted this case to the jury instead of directing a verdict at the close of the evidence, it would be possible simply to reinstate the verdict and thereby avoid a new trial.[6] However the judge also granted appellee's alternative motion for a new trial, on the ground that the verdict was against the weight of the evidence. That motion is addressed to the sound discretion of the trial court, which appellate courts are reluctant to disturb on appeal.[7] Because that ruling may have

Starke, 76 U.S.App.D.C. 42, 128 F.2d 611 (1942); Heurich Brewing Co. v. McGavin, 56 App.D.C. 389, 16 F.2d 334 (1926); Terminal Taxicab Co. v. Blum, 54 App.D.C. 357, 298 F. 679 (1924).

3. *See* Robinson v. City Express, Inc., 112 U.S.App.D.C. 16, 298 F.2d 677 (1962) (pedestrian emerged from behind oncoming traffic); Capital Transit Co. v. Gamble, 82 U.S.App.D.C. 57, 160 F.2d 283 (1947) (child darted out from behind furniture on sidewalk); Mackall v. Washington Gas Light Co., 79 U.S.App.D.C. 308, 147 F.2d 149, cert. denied, 325 U.S. 869, 65 S.Ct. 1404, 89 L.Ed. 1988 (1945) (pedestrian overtook truck from right rear, out of driver's normal range of vision).

4. As the majority points out, there is evidence tending to show that appellant was intoxicated at the time of the accident. In addition, it may be some evidence of negligence that appellant was crossing a street in the middle of the block. *See* D. C. Motor Vehicle Regs. § 53(a). Finally, the jury, like the majority of this court, may have discredited appellant's statement that he looked both ways before crossing, and found that he failed to exercise reasonable care in that regard.

5. *See* Capital Transit Co. v. Garcia, 90 U.S.App.D.C. 168, 194 F.2d 162 (1952); Boaze v. Windridge & Handy, 70 App. D.C. 24, 102 F.2d 628 (1939); Reid v. Lyon, 278 F.Supp. 855 (D.D.C.1967); and cases cited note 2 *supra*. *But see* Faucett v. Bergmann, 57 App.D.C. 290, 22 F.2d 718 (1927). *See generally* Restatement (Second) of Torts §§ 479–480 (1965). The traffic regulations of the District of Columbia provide:

> [E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

D. C. Motor Vehicle Regs. § 54.

6. Morse v. Moretti, 131 U.S.App.D.C. 158, 403 F.2d 564 (1968); 5 J. Moore, Federal Practice § 50.03 (1969).

7. *See* Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147 (1940); Binder v. Commercial Travelers Mutual Accident Ass'n of America, 165 F.2d 896 (2d Cir. 1948).

been based in part on the erroneous view that the doctrine of last clear chance is inapplicable to the facts of this case, I would remand the case for reconsideration of the ruling on the motion for a new trial. And if a new trial were granted, then I would require the jury to be instructed that contributory negligence is no bar to recovery if the defendant had the last clear chance to avoid the accident.