John V. BERTRAND, Plaintiff-Appellant,

v.

SHELL OIL COMPANY,
Defendant-Appellee.

No. 72–2955.

United States Court of Appeals,
Fifth Circuit.

Dec. 27, 1973.

Rehearing Denied Feb. 4, 1974.

Vernon C. McManus, Robert K. Guillory, Eunice, La., for plaintiff-appellant.

James T. Guglielmo, Opelousas, La., for defendant-appellee.

Before BELL, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge:

Plaintiff-appellant John V. Bertrand was injured while working as a welder on an offshore fixed production platform located in the Gulf of Mexico approximately ninety miles off the coast of Louisiana. This offshore structure was owned and operated by the defendant Shell Oil Company. On the day of the accident Bertrand, an employee of Henson Welding Service, had been instructed by Shell to remove certain sections of metal grating which formed the decking on the platform. Bertrand was given two helpers for this task, Roger Broussard, a Shell employee, and James Keliehor, who was employed by Berry Brothers, a general roustabout contractor. After Bertrand had cut the grating loose from the rig structure, the men lifted it from its previous position and stood it upright.[1] Broussard was assigned to hold the grating—which weighed about 500 pounds and was approximately ten to twelve feet long and four feet high—while Bertrand and Keliehor, straddling the I-beam directly in front of the grating in the open space left by its removal, were smoothing off the surface from which the grating had been removed. Bertrand was seriously injured when Broussard lost his grip on the grating allowing it to fall on top of Bertrand.

Bertrand's suit against Shell Oil was tried to a jury, and although Shell was found negligent, Bertrand was precluded from any recovery because the jury found him contributorily negligent. Two issues raised on appeal merit discussion:[2] (1) whether the trial court erred in applying the Louisiana contributory negligence rule rather than the federal maritime standard of comparative negligence, thereby barring any recovery if Bertrand's own negligence contributed to his injury; and (2) whether the evidence at trial would have supported jury instructions on the last clear chance doctrine, thus producing error from the court's failure to give the requested instruction. We affirm.

I.

In an attempt to escape the consequences of the contributory negligence rule, Bertrand offers two theories to avoid its application. The first is that under the Outer Continental Shelf Lands Act (43 U.S.C. § 1331 et seq.), as interpreted by Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), state law is to be applied as surrogate federal law only where it is not inconsistent with existing federal law, and therefore comparative negligence, rather than the inconsistent Louisiana rule of contributory negligence, should be used here. This contention is precluded by Dickerson v. Continental Oil Co., 449 F.2d 1209 (5th Cir., 1971). Applying the principles discussed in the Supreme Court's decision in *Rodrigue,* the *Dickerson* court stated:

> "We feel Rodrigue compels the application of .Louisiana's doctrine of contributory negligence in this case. Though maritime law utilizes a doctrine of comparative negligence, the events in question here, as in Rodrigue, all occurred on the platform. As the Supreme Court stated, 'for federal law to oust adopted state law federal law must first apply.' Since that court has decided that accidents which occur on such platforms have 'no more connection with the ordinary stuff of admiralty than do accidents on piers,' we are compelled to agree that Louisiana law applies."

449 F.2d at 1219.

---

1. It is uncertain whether Keliehor and Broussard lifted the grating alone, or also had help from Bertrand.

2. Other issues are that there is no evidence to support the jury's conclusion that Bertrand was contributorily negligent and that the court erred in the manner in which it framed the special interrogatories submitted to the jury. We have read the record and are convinced that there is evidentiary support for the jury's decision. Moreover, there is no merit to Bertrand's argument regarding the special interrogatories and thus further discussion of these points is unnecessary.

■ Bertrand's argument is premised on the fundamental misconception that his claim is maritime in nature. Both *Rodrigue* and *Dickerson* make it plain, however, that actions arising from accidents on these "artificial islands" are not governed by traditional admiralty law; comparative negligence is therefore not the standard.

■ Bertrand's second theory must also be rejected because of the special rules created by the Outer Continental Shelf Lands Act. Section 1333(c) explains that an employee injured as a result of operations on the outer continental shelf as a remedy against his employer under the Longshoremen's and Harbor Workers' Compensation Act. Section 905 of this Act "unequivocally provides that the benefits secured to a claimant under [it] shall be the 'exclusive remedy' of the claimant against his employer." Bertrand v. Forest Corp., 441 F.2d 809, 811 (5th Cir., 1971). Bertrand's contention that the Louisiana Workmen's Compensation Act is somehow applicable to prohibit Shell from asserting contributory negligence as a defense to liability is therefore untenable. His only remedy against Shell is that he has pursued here, and as we have already noted, the usual Louisiana rules including contributory negligence govern this action.

## II

■ A closer question is raised by Bertrand's contention that the trial court erred in refusing to instruct the jury on the last clear chance doctrine. Characterizing the facts here as a "classical" situation for the application of this legal device which permits a plaintiff to avoid the consequences of his own

negligence, Bertrand argues that there is evidentiary support for such an instruction in the record. We disagree; the facts here represent the antithesis of a classical last clear chance case,[3] if indeed there is such a thing. When viewed against the applicable Louisiana law, the factual context present here supports the district court's conclusion that the issue was not raised.

■ The criteria necessary for the operation of the doctrine have been clearly established by the Louisiana courts: (1) the plaintiff, through his own negligence, must be in a perilous position of which he is unaware or from which he is unable to extricate himself; (2) the defendant must be actually aware of plaintiff's perilous condition or must be in such a position that he should have discovered plaintiff's situation; and (3) defendant must have been able, either at the time he discovered or should have discovered plaintiff's position, to avoid injuring him by the exercise of ordinary care. Bergeron v. Dept. of Highways, 221 La. 595, 60 So.2d 4 (1952); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); McDonald v. Scotlandville Fire Pro. Dist. Com'n., 222 So.2d 324 (La.App. 1969). Unless all three of these elements are present a jury question is not raised. *See* Bergeron v. Dept. of Highways, *supra.*

■■ In retrospect the first element is easily satisfied as a result of the jury's conclusion that plaintiff was contributorily negligent; of necessity his negligent act was placing himself beneath the 500 pound grating held at his direction by one man. That he was unaware of this perilous position is not contested.[4]

3. With the exception of one case, to be discussed in the text *infra*, all of the Louisiana based cases we have read which discuss the doctrine of last clear chance arise in some manner from the operation of a motor vehicle. If pressed to apply a "classical" label to a particular fact situation, we would choose a case in which a vehicle collides with a pedestrian. Other recurring examples are automobiles colliding with automobiles, and automobiles colliding with trains or vice versa.

4. A plaintiff's negligence may continue until the moment of the accident and the last clear chance doctrine will nonetheless permit him to recover if the defendant appreciated

Evidence was not introduced, however, to fulfill either the second or third elements of the formula. The first question in this regard is whether Shell's employee Broussard knew or should have known of plaintiff's perilous position.[5] Broussard was a "greenie"—a worker not yet initiated into the ways of an offshore rig employee. He had been with Shell for less than a month prior to the accident, and although Bertrand was not his boss in a strict sense, it is clear that Bertrand was in charge of the work the three men were doing on the day of the accident. The job was begun early that same morning, but the accident did not occur until around 4:30 in the afternoon. There is no testimony that any procedure other than that being used at the time of the accident had been used earlier in the day. Broussard was given no indication that the procedure being used on this occasion was unusual, out of the ordinary or particularly dangerous, and he had not done this type of work in a different manner at a previous time. Moreover, there is no evidence indicating that Broussard encountered difficulty performing his assigned duties at any time earlier in the day. Plaintiff's counsel attempted to elicit testimony that Broussard was tired and that this was why he dropped the grating. The only conclusion supported by the evidence, however, is that Broussard's knowledge that he was going to drop the grating and the actual falling of it coalesced instantaneously. Whether Broussard's negligence is considered as the initial act of holding the grating or the ultimate act of dropping it, there is no evidence which could support a jury's decision that he should have realized he was going to drop the grating and thus either knew or should have known that plaintiff was in a perilous position.[6] Finally, once Broussard realized he was going to drop the grating, it was too late for him to do anything to avoid the accident, thus leaving the third element unfulfilled.[7]

We have found only one case with facts even remotely analogous to those

---

his peril or should have done so in time to avoid injuring him. Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); see, e. g., Moore v. Nola Cabs, 70 So.2d 404 (La.App. 1954).

5. The addition of the should have known aspect of the last clear chance doctrine as formulated by the Louisiana courts was accomplished in Jackson v. Cook, supra. The source for this addition was the recognition of a motorist's duty to keep a lookout for persons who might be in danger by the operation of a motor vehicle. As explained by the Louisiana Supreme Court, "the first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger." Id. at 197. Moreover, "the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability." Id.

6. See Employers Liability Assurance Corp. v. Butler, 318 F.2d 67 (5th Cir., 1963); Ballard v. Piehler, 98 So.2d 273 (La.App.1957). Compare Conlon v. Tennant, 110 U.S.App. D.C. 140, 289 F.2d 881 (1961) (issue of last clear chance raised by defendant's testimony regarding the events immediately preceding his collision with pedestrian plaintiff), with Allen v. Texas & Pacific Ry., 195 F.2d 545 (5th Cir., 1952) (Louisiana doctrine of last clear chance not applicable because no record evidence to support conclusion that defendant was aware or should have been aware that plaintiff was in perilous position).

7. See James v. United States, 252 F.2d 687 (5th Cir., 1958) (Louisiana case); Lapuyade v. Pacific Employers Ins. Co., 202 F.2d 494 (5th Cir., 1953) (Louisiana case); McDonald v. Scotlandville Fire Pro. Dist. Com'n, supra; Maryland Cas. Co. v. Allstate Ins. Co., 96 So.2d 340 (La.App.1957). The following statement is particularly appropriate to the case at bar:

"We read the evidence as did the trial judge, namely, there was not the requisite room in it for the play of last clear chance. That doctrine has generally been regarded as an ameliorative one applicable in the circumstances where both parties to an accident have some portion of culpability, but the defendant is shown to have had some capacity to avert the disaster by alternatives reasonably available at the last moment. [Omitting citation.] And, as we said in that case, where the doctrine might otherwise be applicable, it is not so

here, and it supports the district court's conclusion to withhold an instruction on the last clear chance doctrine. In Employers Liability Assurance Corp. v. Butler, 318 F.2d 67 (5th Cir., 1963), the trial court had instructed the jury on the last clear chance doctrine, and a verdict was returned for plaintiff Butler. Plaintiff's fifteen year old daughter Brenda was burned to death while participating in a talent show sponsored by the defendant's insured, Radio Station WYLD in New Orleans. Brenda was scheduled to perform a fire dance; she had been encouraged and aided in this endeavor by one of the station's disc jockeys who was serving as master of ceremonies at the talent show. Immediately prior to her act, Brenda had discarded the special skirt originally designed for the fire dance and had changed to a grass hula skirt. She apparently believed that the burning alcohol would not ignite the skirt because of the low temperature at which it burned. But as soon as the act began the skirt was ignited, consuming her in flames.

The crucial question on appeal was whether the disc jockey-master of ceremonies had the last clear chance to avoid the accident. We reversed, holding that the last clear chance instruction should not have been given because the plaintiff failed to satisfy the second requirement for recovery. "Not only must the injured party be unaware, albeit negligently, of his peril, the defendant must know of the peril and do nothing to prevent injuring the plaintiff. Where 'the evidence does not show that defendant actually discovered or should have discovered plaintiff's peril in time to avoid the accident,' there is no liability." *Id.* at 71–72. On the basis of the following analysis the court concluded that the standard had not been met:

"In the present case there is nothing in the evidence to show that Mc-

'if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously.' "

Kinley [the disc jockey] was any more aware than Brenda of the danger. He had seen a 'fire dance' done in a night club and had assumed that it could be done safely. He had not seen her practice the dance at rehearsals and did not know that she planned to *step* into the fire rather than dance behind it. Moreover, at the time of the performance the lights were dim, and McKinley did not particularly notice Brenda."

*Id.* at 72.

Judge Wisdom, writing for the court, then reasoned that although the disc jockey "might have been negligent in not observing more closely Brenda's costume and her preparations for the dance, the plaintiff cannot demand of the defendant a higher standard of care in noticing and evaluating the surrounding circumstances than the injured party herself." *Id.*

In a similar manner, to hold that Shell Oil could be liable here under the last clear chance doctrine would require us to demand of Broussard, an inexperienced worker under plaintiff's charge on the day of the accident, "a higher standard of care in noticing and evaluating the surrounding circumstances" than Bertrand exercised for his own safety. As did the *Butler* court, we believe that "[t]he Louisiana courts would not allow the use of the last clear chance doctrine to impose liability in this situation, see, e. g., Thomas v. Lumbermen's Mutual Cas. Co., La.App., 1962, 146 So.2d 275." 318 F.2d at 73. For this reason and because of a complete absence of time for Broussard to have prevented the accident once he became aware he was going to drop the grating, we hold that the evidence failed to raise a last clear chance issue.

The judgment of the district court is therefore affirmed.

Law v. Virginia Stage Lines, Inc., 144 U.S. App.D.C. 115, 444 F.2d 990, 994 (1971).